UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LILLIAN LYNETTE MEJIA and MELANIE BREVIS,<br><br>*Plaintiffs*<br>*v.*<br><br>LAFAYETTE CONSOLIDATED GOVERNMENT and ROBERT JUDGE, in his official and individual capacities as President of the Lafayette Public Library Board of Control;<br><br><br>*Defendants* | CIVIL ACTION NO.:<br><br>SECTION:<br><br>DIVISION:<br><br>JUDGE:<br><br>MAGISTRATE JUDGE: |

## COMPLAINT

Plaintiffs LYNETTE MEJIA and MELANIE BREVIS bring this action for declaratory and injunctive relief, as well as for damages, for violations of their First Amendment rights under the United States Constitution as well as for violations of Louisiana Open Meetings Law. In support of their claims, Plaintiffs respectfully state:

## INTRODUCTION

1.

Defendants' policies pertaining to the conduct of the Lafayette Public Library Board of Control meetings silence individual viewpoints disfavored by Board members and chill speech by members of the public. Members of the public are threatened with criminal prosecution for engaging in protected free speech, and Plaintiff Brevis was forcibly removed from a public meeting for her exercise of protected free speech. The policies governing public library board

meetings are contrary to the Constitution and the Louisiana Open Meetings Law. Plaintiffs challenge this intrusion onto their rights.

## JURISDICTION

2.

This is an action for declaratory and injunctive relief and damages pursuant to 42 U.S.C. §1983 based upon the continuing violations of the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

3.

This Court has jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law. Supplemental jurisdiction over the state law claims is proper under 28 U.S.C. § 1367.

## VENUE

4.

Venue is proper in this District because Defendants are all residents of Lafayette, which is within the jurisdiction of the Western District of Louisiana. Additionally, the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b).

## PARTIES

5.

Plaintiff Lynette Mejia is an author and resident of Carencro, Louisiana. She is a co-founder of the groups Lafayette Citizens Against Censorship and Louisiana Citizens Against Censorship. She is a longtime library volunteer and an active member of her community, who frequently attends the Library Board of Control meetings and seeks to publicly comment at those meetings.

6.

Plaintiff Melanie Brevis is a former librarian and resident of Lafayette, Louisiana. She is a co-founder of the groups Lafayette Citizens Against Censorship and Louisiana Citizens Against Censorship. She frequently attends the Lafayette Library Board of Control meetings. She is a passionate advocate for public libraries and the right of the public to receive information through its libraries, and she engages in public comment regarding same.

7.

Defendant Lafayette Consolidated Government ("LCG") is a juridical entity capable of suing and being sued. It is comprised of the Lafayette Parish and City Councils. The Parish Council appoints and supervises members of the Lafayette Public Library Board of Control, including Defendant Judge, and as such it is ultimately final policymaker as to the policies and practices thereof. Defendant LCG has not taken any action to correct the unconstitutional policies and practices at issue herein, or to protect the First Amendment rights of its citizens. Lafayette Consolidated Government is sued for declaratory and injunctive relief, as well as for nominal and compensatory damages.

8.

Defendant Robert Judge is the President of the Lafayette Public Library Board of Control and resident of Lafayette, Louisiana. He is appointed to his position by Defendant Lafayette Consolidated Government through the Parish Council. As President of the Lafayette Public Library Board of Control and as a final policymaker for that body, Defendant Judge has instituted a raft of unconstitutional policies and practices, cataloged below. He is sued in his official capacity for declaratory and injunctive relief, as well as for compensatory and nominal damages. He is sued in his individual capacity for statutory, compensatory, punitive and nominal damages.

## FACTUAL ALLEGATIONS

9.

In February 2021, the Parish Council of the Defendant Lafayette Consolidated Government appointed Defendant Robert Judge to the Lafayette Public Library Board of Control.

10.

As President of the Library Board of Control, Defendant Judge presides over and controls the conduct of the Board's meetings.

11.

Each meeting of the Library Board of Control includes opportunities for (1) public comments upon matters on the agenda for vote and (2) comments from the public on any other matter not on this agenda.

12.

The public comment period at Library Board of Control meetings is a public forum subject to strong First Amendment protections.

13.

Defendant Judge's tenure as President of the Lafayette Public Library Board of Control has been fraught with controversy and community dissension pertaining to censorship of books and materials housed in the Lafayette Public Library System.

14.

In November 2021, Defendant Judge voted to remove an award-winning book from library shelves, despite public support for it to remain. The book was retained, but the library director entirely dissolved the Young Adult nonfiction section.

15.

In April 2022, the Board considered attempts to remove a documentary film with sexual content from the library collection. The Board voted instead to limit access to the film.

16.

In July 2022, Defendant Judge presided over an attempt to fire an award-winning librarian. A formal investigation yielded no grounds for dismissal and the librarian was retained.

17.

Members of the public frequently attend the Library Board of Control meetings, and many speak out in opposition to Defendant Judge, Board policy proposals and attempts at censorship.

18.

In September 2022, Defendant Judge affixed an excised portion of Louisiana Revised Statute 14:103 (the disturbing the peace criminal statute) on the entry doors to the library facility where Board of Control meetings are held.

19.

The posting states:

RS 14: Subpart C. Offenses Affecting the General Peace and Order §103. Disturbing the Peace. A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public: (2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty; or (6) Interruption of any lawful assembly of people; (….)

20.

The United States Supreme Court and Louisiana Supreme Court have prohibited or limited application of this statute's language for more than 60 years.

21.

Also beginning in September 2022, Defendant Judge posted two sheriff's deputies at the Board of Control's public meetings. Those deputies flank the Board members and face the members of the public in attendance.

22.

Since September 2022, prior to allowing public comment at each meeting, Defendant Judge issues a series of warnings to attendees.

23.

These warnings include advising the public that people will be removed if their speech is deemed violative of La. R.S. 14:103, without explaining what conduct or words will violate the statute.

24.

The warnings also instruct members of the public they will be removed if they use "confrontational" or "derogatory" speech or debate during the public comment portion.

25.

Defendant Judge does not define "confrontation" or "derogatory" or "debate."

26.

The warnings also instruct members of the public that they will be removed if they mention Board members by name during the public comment portion of the meeting.

27.

On multiple occasions, Defendant Judge has used these policies to engage in content discrimination and viewpoint discrimination.

28.

Despite these speech restrictions, Defendant Judge has allowed members of the public with whom he shares personal viewpoints to engage in speech that arguably falls within the proscribed categories.

29.

No speakers who engaged in speech that aligned with Defendant Judge's own personal beliefs has been ejected from a public meeting.

30.

For example, Defendant Judge has permitted certain speakers to insinuate that members of the community opposing censorship are "grooming" children for sexualization.

31.

As further example, Defendant Judge has permitted multiple members of the public to praise him, by name, despite the policy of not "singling out" Board members by name.

32.

At the January 9, 2023 meeting, Ms. Brevis used her allotted time during public comment period to voice her disapproval of actions taken by the Board under Defendant Judge's leadership, particularly the politicization and discriminatory viewpoints held by some Board members, whom she identified by name.

33.

In rebuttal to past allegations that advocates opposing censorship are "groomers," Ms. Brevis stated that Board Member Armbruster "stood on a street corner outside the library, protesting Drag Queen Story Time, grooming her children and others by her message that there is something pathologically wrong with certain gender and sexual identities, even as she claims to love everyone. We know Stephanie, Robert Judge, and groomers within the community have

7

pushed false narratives…." before her microphone was silenced during her allotted three minutes.

34.

Defendant Judge ordered two deputies to eject Ms. Brevis.

35.

Ms. Brevis and members of the public asked multiple times why Brevis was being expelled from the meeting.

36.

The sheriff's deputies did not articulate any legal explanation as to why Ms. Brevis was being ejected from the public meeting beyond that Defendant Judge had ordered her removal.

37.

Ms. Brevis was removed from the building by Lafayette Parish Sheriff's deputies, acting on orders from Defendant Judge.

38.

Defendant Judge permitted the speaker immediately following Ms. Brevis to attack the library's curation policies and assert that a book centering on a gay character reflected "perversion" in the community without ejecting her from the meeting.

39.

Defendants' policies would chill the speech of a person of ordinary firmness. Plaintiffs' speech has been chilled in fact by Defendant Judge's actions. Plaintiffs must and do self-censor for fear of removal, arrest, and/or retaliation against them for their fully protected speech.

**STATEMENT OF THE CLAIMS**

40.

Defendants' policies governing the Lafayette Public Library Board of Control are unconstitutional facially and as applied. They are overly broad, vague, viewpoint and content-based restrictions on free speech in plain violation of the First Amendment to the United States Constitution. They also violate the Louisiana Open Meetings Laws.

**COUNT ONE: DEFENDANTS' POLICIES ARE FACIALLY UNCONSTITUTIONAL BECAUSE THEY ARE OVERLY BROAD**

41.

Plaintiffs re-allege and incorporate by reference the allegations set forth in the paragraphs above.

42.

When government policy restricts or chills a substantial amount of protected speech, those prohibitive practices are unconstitutionally overly broad.

43.

Speech that is offensive, derisive, annoying, confrontational, or derogatory is protected by the United States Constitution.

44.

Speech addressed to public officials directly and by name is core political speech necessary to democratic governance and protected by the United States Constitution.

45.

The posting and threatened enforcement of the portion of the disturbing the peace statute facially prohibits and chills a large swath of protected speech.

46.

The limitations on speech imposed by formal announced policy at the meetings likewise

sweep a substantial amount of protected speech within their ambit.

47.

Because the Defendants' policies and practices reach a substantial amount of speech

protected by the Constitution, they are overly broad.

## COUNT TWO: DEFENDANTS' POLICIES ARE FACIALLY UNCONSTITUTIONAL BECAUSE THEY ARE VAGUE

48.

Plaintiffs re-allege and incorporate by reference the allegations set forth in the

paragraphs above.

49.

When government policy fails to provide people of ordinary intelligence with a

reasonable opportunity to clearly understand what conduct it prohibits, it is unconstitutionally

vague.

50.

The terms offensive, derisive, annoying, confrontational, and derogatory are vague.

51.

The posting of the excised portion of the disturbing the peace statute without further

explanation is vague.

52.

Because the Defendants' policies and practices fail to provide people of ordinary

intelligence any fair notice of what kind of speech is permissible and what kind of speech will

cause them to be ejected or arrested, the restrictions are unconstitutionally vague.

## COUNT THREE: DEFENDANTS' POLICIES ARE FACIALLY UNCONSTITUTIONAL BECAUSE THEY ARE CONTENT AND VIEWPOINT BASED RESTRAINTS ON SPEECH

53.

Plaintiffs re-allege and incorporate by reference the allegations set forth in the paragraphs above.

54.

Content-based discrimination occurs when a government official prohibits speech containing certain content. Viewpoint discrimination occurs when a government official prohibits expression of certain viewpoints. Defendants' policies do both.

55.

Defendant's policies are not narrowly or sufficiently tailored to serve any compelling or important government interest.

56.

There is no legitimate government interest in protecting public officials from public criticism or critique.

## COUNT FOUR: DEFENDANTS' POLICIES ARE UNCONSTITUTIONAL AS APPLIED

57.

Plaintiffs re-allege and incorporate the allegations set forth in paragraphs above.

58.

Defendants' policies are unconstitutional as applied to the Plaintiffs, the public at large, and Ms. Brevis in particular.

59.

Defendants apply their speech-restrictive policies inconsistently and in a viewpoint- and content-based manner. Defendants also apply the policies such that they sweep large swaths of protected speech within their ambit of proscription.

60.

Defendant Judge often allows speakers to praise Board members by name during meetings but prohibits persons critical of the Board from referring to Board members' names.

61.

Defendant Judge often allows offensive, derisive, annoying, confrontational, and derogatory comments in speech by persons politically aligned with him but does not allow the same for speakers critical of Board policy.

62.

Defendant Judge applies policies to silence speech that is fully protected by the Constitution.

63.

Ms. Brevis' speech did not interrupt the Board's business, as she spoke within the public comment period time allotted, addressed her comments to matters within the Board's purview, and did not cause a disturbance to the meeting.

64.

Ms. Brevis was subjected to content and viewpoint-based implementation of the vague and overly broad policies and practices of Defendants, resulting in her removal from a public meeting as she attempted to provide comment to her government officials.

## COUNT FIVE: DEFENDANTS' POLICIES AND ACTIONS ARE UNCONSTITUTIONAL RETALIATION

65.

First Amendment retaliation occurs when a public official acting under color of law takes adverse action against a person solely for their protected speech.

66.

Defendant Judge retaliated against Ms. Brevis because of the content of her speech, ordering deputies to remove her from a public meeting when he disliked her comments.

67.

Defendant Judge took retaliatory action against Ms. Brevis in removing her from the meeting because of the content of her speech.

## COUNT SIX: LOUISIANA OPEN MEETINGS LAW

68.

Plaintiffs re-allege and herein incorporate by reference the allegations set forth in the paragraphs above.

69.

Louisiana Revised Statute 42:12 provides that Louisiana Open Meetings Laws are to be construed liberally, due to the essential nature of public oversight of government officials in our system of government.

70.

The foregoing policies and actions violate the Louisiana Open Meetings Laws, particularly where Louisiana Revised Statute 42:17(C), provides for the ejection from a public meeting of those persons who "willfully disrupt a meeting to the extent that orderly conduct of the meeting is seriously compromised."

71.

Ms. Brevis' ejection from the Library Board meeting constitutes a violation of her rights under the Louisiana Open Meetings Laws.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief from this Court:

A.  Declaratory relief stating that Defendants' policies and practices violate the First Amendment and the Louisiana Open Meetings Laws, facially and as applied.

B.  Injunctive relief prohibiting Defendants from enforcing the policies and practices outlined above that violate the First Amendment and the Louisiana Open Meetings Laws;

C.  Injunctive relief ensuring adequate training of the Lafayette Consolidated Government and the Lafayette Public Library Board of Control on the First Amendment rights of speakers in public meetings and on government obligations under the Louisiana Open Meetings Laws;

D.  An award of nominal and compensatory damages against Defendants in their official capacities;

E.  An award of punitive damages against Defendant Judge in his individual capacity;

F.  Civil penalties for violation of the Louisiana Open Meetings Laws as provided in La. R.S. 42:28;

G.  Award of attorneys' fees and costs; and

H.  An award of any such other and further relief as the Court deems just and proper.

Respectfully submitted,


TULANE FIRST AMENDMENT CLINIC

/s/ *Katie M. Schwartzmann*
Katie M. Schwartzmann La Bar No. 30295
Virginia Hamrick, La Bar No. 40392
Andrew Perry, Student attorney
Christopher Seelie, Student attorney
6329 Freret Street, Suite 130
New Orleans, La 70118
kschwartzmann@tulane.edu
vhamrick@tulane.edu
cperry3@tulane.edu
cseelie@tulane.edu
o: (504) 862-8813