UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LILLIAN LYNETTE MEJIA and MELANIE BREVIS, | CIVIL ACTION NO.: 6:23-CV-00307 |
| Plaintiffs | |
| v. | |
| LAFAYETTE CONSOLIDATED GOVERNMENT and ROBERT JUDGE, in his official and individual capacities as President of the Lafayette Public Library Board of Control; | JUDGE: ROBERT R. SUMMERHAYS |
| | MAGISTRATE JUDGE: WHITEHURST |
| Defendants | |

**<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

# Table of Contents

I.    Plaintiffs State a Claim for Relief Against Defendant City-Parish Pursuant to 42 U.S.C. § 1983 ................................................................................................... 1

A.    Plaintiffs Have Adequately Pled a First Amendment Claim ........................................ 1

B.    Plaintiffs Have Adequately Pled Liability Against the Lafayette City-Parish Consolidated Government ............................................................................................ 2

1.    Liability Attaches Because Defendant Judge is the Duly Designated Final Policymaker of the City-Parish. ............................................................................ 3

2.    Liability Attaches Because the City-Parish Had a Policy of Inaction Toward Defendant Judge's Unlawful Policies and Actions. .......................................... 9

3.    Liability Attaches Because the City-Parish Has Failed to Properly Train or Supervise Defendant Judge. ............................................................................... 15

II.   Plaintiffs Adequately Pled a Claim for Relief Against Defendant City-Parish Pursuant to the State Open Meetings Law ................................................................. 19

III.  Plaintiffs' Prayers for Relief are Proper ......................................................... 22

IV.   Plaintiffs are Entitled to Seek Attorneys' Fees and Costs ........................................... 25

V.    Claims for Punitive Damages are Personal to Defendant Judge. ................................. 26

VI.   Conclusion ............................................................................................ 26

# Table of Authorities

## Cases

*Amawi v. Paxton*, 48 F.4th 412, 416 (5th Cir.2022) ................................................. 37

*Angers v. Lafayette Consol. Gov't*, 2007 WL 2908805 (W.D.La. Oct.3, 2007) ........................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). ....................................................... 6

*Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001)................................ 13

*Belcher v. Lopinto*, 492 F. Supp. 3d 636, 649 (E.D. La. 2020)....................................... 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). ......................................... 6, 31

*Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008). ................................ 14

*Brady v. Fort Bend Cnty.*, 145 F.3d 691, 700 (5th Cir. 1998). ..................................... 14, 36

*Burge v Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999)................................... 15

*Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 904, 909 (E.D.La.2001)........................... 12

*City Council of Lafayette v. Bowen*, 649 So.2d 611, 616 (La.App. 3rd Cir.1994), writ denied, 650
So.2d 244 (La 1995)................................................................................. 10

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989 ...................................... 21, 24

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) .......................................... 13

*Collins v. City of New York*, 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013)................................ 22

*Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020) .............................. 33

*Delacruz v. City of Port Arthur*, No. 1:18-CV-11, 2019 WL 1211843, at *14 (E.D. Tex. Mar. 14,
2019)............................................................................................. 24

*Dugas v. City of Breaux Bridge Police Dep't, 1999-1320* (La. App. 3 Cir. 2/2/00), 757 So. 2d
741, 744, *writ denied sub nom. Dugas v. City of Beaux Bridge Police Dep't, 2000-0671* (La.
4/20/00), 760 So. 2d 1159 ......................................................................... 12

*Edmiston v. Louisiana Small Bus. Dev. Ctr.*, 931 F.3d 403, 407 (5th Cir. 2019) ....................... 12

*Edmond v. Lafayette Consol. Gov't*, No. 6:16-CV-00045, 2016 WL 3693653, at *3 (W.D. La.
May 24, 2016), *report and recommendation adopted*, No. CV 16-0045, 2016 WL 3693486
(W.D. La. July 5, 2016)........................................................................... 11

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)........................................................... 34

*Harrington v. Harris*, 118 F.3d 359, 364 (5th Cir. 1997) ............................................ 33

*Harris v. Monroe Cnty. Pub. Libr. Bd. Of Trustees*, No. CV 19-00265-CG-N, 2020 WL
3344316, at *6 (S.D. Ala. May 22, 2020), report and recommendation adopted, No. CV 19-
0265-CG-N, 2020 WL 3350401 (S.D. Ala. June 17, 2020)............................................... 21

*Heaney v. Roberts*, 846 F. 3d 769, 801 (5th Cir. 2017) ............................................. 26

*Higher Society of Indiana v. Tippecanoe County, Ind.*, 858 F.3d 1113, 1116 (7th Cir. 2017)..... 35

*Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016).......................................... 8

*Kanciper v. Lato*, 989 F. Supp. 2d 216, 237 (E.D.N.Y.2013)......................................... 36

*LaMartina-Howell v. St. Tammany Par. Sch. Bd.*, No. CIV. A. 07-1168, 2009 WL 3837323, at
*2 (E.D. La. Nov. 12, 2009)....................................................................... 12

*Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 31 (2010)........................................ 34, 35

*Manley v. State of Louisiana*, No. 00–1939, 2001 WL 506175, at *2 (E.D.La. May 11, 2001) .. 12

*McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996 (5th Cir. 2023).................................. 12

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978................. 32, 34, 36

*Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022). .................................... 8

*Neighbors of 200 Henry Clay Ave. v. Bd. of Zoning Adjustment, 2021-0387* (La. App. 4 Cir.
1/26/22), 335 So. 3d 255, 264, *writ denied sub nom. Neighbors of 200 Henry Clay Ave. v. Bd.
of Zoning Adjustment of the City of New Orleans*, 2022-00337 (La. 4/20/22), 336 So. 3d 46712

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). .......................................................8, 13

*Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)..........................................22

*Reyna v. Garza*, 569 F.Supp.3d 567, 583 (S.D. Tex.2021)............................................................33

*Seals v. McBee*, 898 F.3d 587, 591 (5th Cir. 2018), as revised (Aug. 9, 2018) ..........................35

*Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) ...........................................................23

*Spriggens v. Orleans Par. Prison*, No. 10-3219, 2010 WL 5525079, at *2 (E.D. La. Nov. 23,
     2010), *report and recommendation adopted*, No. 10-3219, 2011 WL 39011 (E.D. La. Jan. 5,
     2011)..................................................................................................................................10

*Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 801 (2021) ........................................................36, 37

*West v. Atkins*, 487 U.S. 42, 48 (1988)..........................................................................................6

*West v. Atkins*, 487 U.S. 42, 55–56 (1988).....................................................................................23

*Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)...............................................................13

## Statutes

42 U.S.C. § 1983 ......................................................................................................................23, 32

La. Rev. Stat. § 42:13.....................................................................................................................30

La. Rev. Stat. § 42:14...............................................................................................24, 28, 29, 30

La. Rev. Stat. § 42:17...................................................................................................26, 29, 30

La. Rev. Stat. § 42:25(C)...............................................................................................................27

La. Rev. Stat. § 42:26............................................................................................................passim

La. Rev. Stat. § 42:26....................................................................................................................27

La. Rev. Stat. § 42:26....................................................................................................................27

La. Rev. Stat. §§ 42:12............................................................................................................28, 29

La. Rev. Stat. §33:1415.................................................................................................................16

La. Rev. Stat. § 25:211....................................................................................................................9

La. Rev. Stat. § 25:214...........................................................................................19, 23, 24

La. Rev. Stat. § 25:215...................................................................................................................14

La. Rev. Stat. § 25:284...................................................................................................................11

La. Rev. Stat. § 42:28.....................................................................................................................28

Lafayette, LA Code of Ordinance §54-2 ....................................................................................9, 18

Lafayette, LA Code of Ordinance §54-1 .........................................................................................9

Lafayette City-Parish Consolidated Government Home Rule Charter §7-09. .............16

Lafayette, LA Code of Ordinances § 1-2.......................................................................................23

Lafayette, LA Code of Ordinances § 94-233(a)............................................................................11

Lafayette, LA Code of Ordinances §§14-41(b) .............................................................................11

Lafayette, LA Code of Ordinances §1-01.......................................................................................9

Lafayette, LA Code of Ordinances §54-1 ......................................................................................20

## Other Authorities

Andrew Capps, *Can appointed Lafayette Library Board members be removed? Council asking
     amid controversies,* Daily Advertiser (Aug 14, 2022) .........................................................21

Ben Myers, *Drag Queen Story Time still happening after Lafayette council avoids taking
     position on it,* Acadiana Advoc. (Sep. 18, 2018)................................................................18

Claire Taylor, *Lafayette library board meeting changes may have 'chilling effect' on public
     speech, law clinic warns,* Acadiana Advoc. (Oct. 23, 2022)
     https://www.theadvocate.com/acadiana/news/lafayette-library-board-meeting-changes-may-

have-chilling-effect-on-public-speech-law-clinic-warns/article_1d2f76c4-514c-11ed-a026-d72dadd00bb2.html ................................................................................................ 25

La. Att'y Gen. Op. 05-0337 ............................................................................................ 10

La. Att'y Gen. Op. 23-0015 ...................................................................................... 16, 18

La. Att'y. Gen. Op. 16-0163 ........................................................................................... 16

La. Atty. Gen. Op. 01-29 ................................................................................................ 17

La. Atty. Gen. Op. 95-452 .............................................................................................. 17

La. Rev. Stat. §42:62(9). ................................................................................................ 10

John Burnett, *Conservative Christian groups are targeting Louisiana libraries*, Nat'l Pub. Radio (5:10 A.M. Aug. 30, 2022) https://www.npr.org/2022/08/30/1120023684/conservative-christian-groups-are-targeting-louisiana-libraries#:~:text=Conservative%20Christian%20groups%20are%20targeting%20Louisiana%20libraries%20A%20conservative%20Christian,the%20Year%20for%20her%20opposition .. 25

Defendant Lafayette City-Parish's Motion to Dismiss is premised on a mistaken understanding of the claims pled in Plaintiffs' Complaint, and on application of inapposite law. Defendant's Motion to Dismiss should be denied.

## I.    Plaintiffs State a Claim for Relief Against Defendant City-Parish Pursuant to 42 U.S.C. § 1983

Plaintiffs seek redress for violation of their First Amendment rights, pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983 a plaintiff must allege 1) that the misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs' complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of this motion, the Court must accept all facts complained of as true.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### A.    Plaintiffs Have Adequately Pled a First Amendment Claim

Although it does not concede the veracity of the facts as alleged, Rec. Doc. 11-1 at n. 3, Defendant does not contest that the facts as pled would constitute a First Amendment violation. As such, Plaintiffs will not spend pages here articulating why the well-pleaded facts give rise to colorable claims for relief pursuant to the First Amendment. Plaintiffs have pled adequate facts to meet all elements of several First Amendment claims against the Defendants. Defendant City-

Parish's brief focuses exclusively on the availability of recovery against Defendant City-Parish. Plaintiffs respond accordingly.

**B.    Plaintiffs Have Adequately Pled Liability Against the Lafayette City-Parish Consolidated Government.**

Plaintiffs plead three theories of liability under *Monell*. First, Plaintiffs plead that a final policymaker implemented unconstitutional practices with the City-Parish's authority, establishing municipal liability. Rec. Doc. 1 at ¶¶ 18-27. Second, Plaintiffs plead that the City-Parish is liable because it adopted a policy of inaction and declined to intervene in known unlawful behavior. Rec. Doc. 1 at ¶ 7. And finally, Plaintiffs plead that the City-Parish is liable for failure to train or supervise those individuals that it appoints or has authority over, including Defendant Judge and the Board of Control members, such that their unlawful actions are attributable to it. Rec. Doc. 1 at ¶ 7. Each of these theories is premised on the action or inaction of the Defendant City-Parish itself, not a theory of vicarious liability or respondeat superior.

Defendant asserts that Plaintiffs have not properly identified any alleged custom, policy, practice, deliberate indifference, "moving force," or affirmative act that establishes *Monell* liability against Lafayette City-Parish Consolidated Government.  Rec. Doc. 11-1 at pg. 6. It argues that Plaintiffs' claims fail because they have not shown that the injury is not just "the result of the deficient policies or practices of the Library Board." Rec. Doc. 11-1 at pg. 8. It repeatedly notes "the Library Board's power and authority to establish rules and regulations for its governance" as support for its position that the City-Parish is not responsible.  Rec. Doc. 11-1 at pg. 9. It is correct that Defendant Judge, as President of the Lafayette Library Board of Control, promulgated the substantive unconstitutional policies and practices challenged in this litigation. But as a matter of law, the City-Parish must answer to this suit because the Library Board of Control is not a separate juridical entity from the City-Parish. Mr. Judge acts as the City-Parish's final policymaker related

2

to library meetings. The City-Parish also has adopted its own policies declining to intervene in Defendant Judge's unconstitutional behavior. And the City-Parish has failed to train and supervise Defendant Judge, despite clearly being on notice of the need to do so. Each theory of liability is properly pled and prevents dismissal of Defendant City-Parish. Each will be addressed in turn.

### 1.    Liability Attaches Because Defendant Judge is the Duly Designated Final Policymaker of the City-Parish.

Liability for constitutional violations attaches to a municipality in several possible ways, including through implementation of official policy or custom. *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022). Under the policy or custom theory, municipalities are responsible for constitutional rights violations if there is (1) "an official policy (or custom)," (2) of which "a policy maker can be charged with actual or constructive knowledge," and (3) "a constitutional violation whose 'moving force' is that policy (or custom)." *Id*. A "policy or custom" can be established by adoption of a law or custom. Liability also can be imposed for a policy or a single decision by a person designated with the authority to do so—a "final policymaker." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Final policymaker liability is satisfied when the action is "undertaken by the municipal official or entity possessing 'final policymaking authority' for the action in question." *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016).

Defendant agrees that City-Parish liability attaches where an appropriate officer "promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." Rec. Doc. 11-1 at pg. 6 citing *Burge v. Parish of St. Tammany*, 187 F. 3d 452, 471 (5th Cir. 1999). The Parties diverge on the question of whether Plaintiffs have pled a policy or policymaker of Defendant City-Parish. Plaintiffs have, for the reasons that follow.

### a)    The Library Board of Control is a Part of Parish Government

Lafayette City-Parish Consolidated Government is a political subdivision of the State of Louisiana. LAFAYETTE, LA CODE OF ORDINANCES §1-01. Pursuant to state law, Defendant City-Parish has the discretion to create public libraries, either of its own initiative or when requested to do so by the taxpayers. La. Rev. Stat. § 25:211. Pursuant to this authority, Defendant City-Parish created local libraries. LAFAYETTE, LA CODE OF ORDINANCE § 54-02. Defendant City-Parish also created, by local ordinance, a Library Board of Control to govern operation of the libraries. LAFAYETTE, LA CODE OF ORDINANCE § 54-1.

In the ordinance creating the Library Board of Control, the Defendant City-Parish established the scope of authority for the Library Board.

> The board shall have authority to establish rules and regulations for its own government and that of the library and/or its branches not inconsistent with law and to elect and employ assistant librarians and other employees and to fix their salaries and compensation….

LAFAYETTE, LA CODE OF ORDINANCE § 54-2(c). The Defendant City-Parish chose to establish a seven-member board, comprised of citizens of the Parish who do not otherwise hold elected office. The City-Parish also designated the City-Parish President (now Mr. Guillory) to sit as an *ex officio* member of the Library Board during his tenure as Parish President. *Id* at (a). The Parish President's seat on the Library Board—or his designee—confirms that the Library Board of Control is an entity of the City-Parish. The City-Parish intentionally retained the ability to participate in the policies and practices thereof.

In addition to the City-Parish having an *ex officio* seat on the Board, the minutes of Library Board meetings reflect further direct involvement of the Parish in oversight of the Library Board of Control. The Parish Attorney provides legal counsel to the Library Board of Control. On January 25, 2021, the City-Parish attorney instructed an assistant City-Parish attorney to brief the Board

on their subordinate legal relationship to the City-Parish.[1] In a March 2021 discussion relating to the adoption of revised by-laws, the same assistant City-Parish attorney advised the Board on the relationship between Parish and State law.[2] On January 10, 2022, the assistant City-Parish attorney once again provided guidance on whether Board members could vote on particular issues.[3] The Defendant City-Parish's attorneys provide advice to the Library Board of Control because it is an entity of the Parish. To quote the Louisiana Attorney General, the Library Board of Control is "an agency of the parish, created by the governing authority of the parish pursuant to authority granted by the legislature for the purpose of operating and administering the parish library system." La. Att'y Gen. Op. 05-0337.

### b) The Library Board of Control is Not a Juridical Entity Capable of Being Sued

Library boards of control are not identified as separate political subdivisions as a matter of Louisiana law. La. Rev. Stat. § 42:62(9). More particularly, there is no statutory authority establishing the Lafayette Library Board of Control as a juridical entity capable of suing or being sued. Under Louisiana law, whether an entity is a juridical entity capable of being sued turns on whether "the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity." *Spriggens v. Orleans Par. Prison*, No. 10-3219, 2010 WL 5525079, at *2 (E.D. La. Nov. 23, 2010), *report and recommendation adopted*, No. 10-3219, 2011 WL 39011 (E.D. La. Jan. 5, 2011). In application of this principle, the Lafayette City council is not a political subdivision because there is no positive law authorizing it as such.

---

[1] Minutes of the Meeting of the Lafayette Library Board of Control, January 25, 2021. Publicly available at http://lafayettepubliclibrary.org/wp-content/uploads/2019/11/Minutes-of-the-January-25-2021-Board-Meeting.pdf.
[2] Minutes of the Meeting of the Lafayette Library Board of Control, March 15, 2021. Publicly available at http://lafayettepubliclibrary.org/wp-content/uploads/2019/11/Minutes-of-the-March-15-2021-Board-Meeting.pdf.
[3] Minutes of the Meeting of the Lafayette Library Board of Control, January 10, 2022. Publicly available at http://lafayettepubliclibrary.org/wp-content/uploads/2019/10/Minutes-of-the-January-10-2022-Board-Meeting.pdf

*City Council of Lafayette v. Bowen*, 649 So.2d 611, 616 (La. App. 3rd Cir. 1994), writ denied, 650 So.2d 244 (La. 1995).  This Court likewise has held that offices are agencies (rather than independent juridical subdivisions) where the home rule charter "did not grant […] the status of a corporate body or place it under a separate board with powers of self-government," or provisions that create "the authority to sue or be sued, or that entitle it to function independently of the [municipality][…]." *Edmond v. Lafayette Consol. Gov't*, No. 6:16-CV-00045, 2016 WL 3693653, at *3 (W.D. La. May 24, 2016), *report and recommendation adopted*, No. CV 16-0045, 2016 WL 3693486 (W.D. La. July 5, 2016).

Critically, in the ordinance creating the Lafayette Parish Library Board of Control, the Defendant City-Parish does not grant the Library Board the capacity to function independently of the City-Parish government. It is not an independent juridical entity capable of suing or being sued. Unlike the Lafayette Airport Commission or the Lafayette Public Power Authority, both of which the City-Parish authorized to function independently, the City-Parish has not granted the Library Board of Control such a capacity. Lafayette, La Code of Ordinances §§14-41(b), 94-233(a). State law also does not create the Lafayette Library Board of Control as an independent entity, as contrasted with the state statute authorizing the Lafayette Law Library Commission. La. Rev. Stat. § 25:284. The Library Board of Control is an agency of the City-Parish government, not an independent juridical entity.

Defendant City-Parish's briefing persistently asserts that it cannot be held liable for the actions of the Library Board of Control, but does not acknowledge that the Board is an entity of its own creation and an agency of itself. The Library Board of Control is not itself a defendant herein because it cannot be. It is an agency or subdivision of another government entity: the Defendant City-Parish.  Because the Lafayette Library Board of Control is an agency of the City-

Parish incapable of itself being sued, the City-Parish Consolidated Government is the proper party to be sued to seek redress for the unconstitutional actions of the Library Board members.[4]

### c) Defendant City-Parish is Responsible for Defendant Judge's Actions as Policymaker for the City-Parish

Defendant Judge, as Library Board President, presides over the Board of Control's public meetings and establishes the rules governing the same. Defendant Judge is empowered to make policies only because Defendant City-Parish empowered Defendant Judge with the authority to do so. Critically, the Defendant City-Parish explicitly chose to appoint and delegate administration of the Library Board of Control meetings to Defendant Judge and the Library Board of Control members. The Defendant City-Parish created Defendant Judge's position and appointed him to it. *"Monell* instructs district courts to examine whether the policymaker either adopted an injury-causing policy *or delegated the authority to adopt such a policy*." *McClelland v. Katy Indep. Sch. Dist.,* 63 F.4th 996, 1011 (5th Cir. 2023).

Defendant's brief goes to great lengths to articulate that it has no control over the operation of the salient policies at issue in this lawsuit because those policies are within the purview of Defendant Judge. Rec. Doc. 11-1 at pg. 6-7. This is precisely Plaintiffs' point as to why Defendant City-Parish is liable—it has designated, by statute and by custom, Defendant Judge as the final policymaker for the City-Parish for the operation of Library Board of Control meetings. Defendant City-Parish makes clear that the Library Board of Control meetings' regulation is vested in the

---

[4] *See, e.g., Edmiston v. Louisiana Small Bus. Dev. Ctr.*, 931 F.3d 403, 407 (5th Cir. 2019); *Manley v. State of Louisiana*, No. 00–1939, 2001 WL 506175, at *2 (E.D. La. May 11, 2001); *Angers v. Lafayette Consol. Gov't*, 2007 WL 2908805 (W.D. La. Oct.3, 2007); *Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 904, 909 (E.D. La. 2001); *LaMartina-Howell v. St. Tammany Par. Sch. Bd.*, No. CIV. A. 07-1168, 2009 WL 3837323, at *2 (E.D. La. Nov. 12, 2009); *Neighbors of 200 Henry Clay Ave. v. Bd. of Zoning Adjustment, 2021-0387* (La. App. 4 Cir. 1/26/22), 335 So. 3d 255, 264, *writ denied sub nom. Neighbors of 200 Henry Clay Ave. v. Bd. of Zoning Adjustment of the City of New Orleans*, 2022-00337 (La. 4/20/22), 336 So. 3d 467; *Dugas v. City of Breaux Bridge Police Dep't*, *1999-1320* (La. App. 3 Cir. 2/2/00), 757 So. 2d 741, 744, *writ denied sub nom. Dugas v. City of Beaux Bridge Police Dep't, 2000-0671* (La. 4/20/00), 760 So. 2d 1159.

Board of Control, of which Defendant Judge as President is the final authority. Rec. Doc. 11-1 at p. 8-9. As final policymaker for the City-Parish, Defendant Judge has adopted unconstitutional policies and practices, for which Defendant City-Parish is now responsible, just as it is responsible when its other final policymaker heads of agencies establish a policy or practice that violates the Constitution.

"[T]he authority to make municipal policy is necessarily the authority to make final policy. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

As the Fifth Circuit explained, "an official may be a policymaker for the county in a particular area or on a particular issue." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001). To be so held, "that official must create policy." *Id*. As Defendant notes, Louisiana law provides that municipalities create library boards of control with authority to "establish rules and regulations for its own government and not inconsistent with law." La. Rev. Stat. § 25:215. The City-Parish did just that. And in so doing, they empowered the president of the Board of Control to be the final policymaker for those rules and regulations. Defendant Judge instituted the series of unconstitutional policies outlined in the Complaint. Rec. Doc. 1 at ¶ 18-27. Defendant Judge ejected Plaintiff Brevis. Rec. Doc. 1 at ¶ 24, 36. Judge is a final policymaker as pertains to the rules and regulations for the Library Board of Control. Defendant City-Parish does not retain any ability to review or constrain Defendant Judge's decisions as to the conduct of board of control

meetings—it explicitly and without constraint vested in him the full unfettered discretion to make those decisions. That is final policymaker status.

Having appointed Defendant Judge policymaker for the City-Parish, Defendant City-Parish is responsible when he violates the Constitution. Where a constitutional violation is committed by a final policymaker, the City-Parish is the moving force behind the violation. *See Bolton v. City of Dallas, Tex.,* 541 F.3d 545, 548 (5th Cir. 2008). Here, liability attaches to the Defendant City-Parish because policies established by Defendant Judge, the designated final policymaker in Board of Control meetings, were the moving force behind constitutional violations. Although Judge's final policymaker status is dispositive of *Monell* liability in this case, the Defendant City-Parish is liable for other reasons as well.

### 2.    Liability Attaches Because the City-Parish Had a Policy of Inaction Toward Defendant Judge's Unlawful Policies and Actions.

The Parties seem to agree on the legal principle that a municipality may be held liable for actions of its subordinates where it exercises a de facto policy of non-action with respect to the constitutional or legal rights of its citizens. This liability attaches where "the need to take some action to control the agents of the local governmental agency is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably said to be deliberately indifferent to the need." Rec. Doc. 11-1 at pg. 6, *citing Burge v Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999). Defendant's only argument as to why it is not liable for Defendant Judge's actions is that it "had no authority to correct" him. Rec. Doc. 11-1 at pg. 9, 8. This is wrong.

Since his appointment to the Library Board of Control by Defendant City-Parish in February 2021, Defendant Judge has been involved in controversies, including those catalogued in Plaintiffs' Complaint. Rec. Doc. 1 at ¶ 13 *et seq*. He has instituted unconstitutional policies and

practices. Rec. Doc. 1 at ¶ 18-27. In September 2022, Defendant Judge affixed an excised portion of Louisiana Revised Statute 14:103 (the state disturbing the peace criminal statute) on the entry doors to the library facility where Board of Control meetings are held. Rec. Doc. 1 at ¶ 18. Defendant Judge posted two sheriff's deputies at the Board of Control's public meetings. Those deputies flank the Board members and face the members of the public in attendance. Rec. Doc. 1 at ¶ 21. In the same month, Defendant Judge began issuing a series of warnings to attendees. Rec. Doc. 1 at ¶ 22. These included advising them that they would be removed if their speech was deemed violative of La. Rev. Stat. §14:103 without explaining the statute. Rec. Doc. 1 at ¶ 23. He warned them they would be removed if they use "confrontational" or "derogatory" speech or debate. Rec. Doc. 1 at ¶ 24. The ensuing controversy made local and national news, and Defendant City-Parish was on notice of the unconstitutional conduct and violations of the Open Meetings Law. Rec. Doc. 1 at ¶ 13. Defendant City-Parish did not act. On January 9, 2023, Plaintiff Brevis was forcibly removed from a public meeting for protected speech. Rec Doc. 1 at ¶ 37.

Plaintiffs plead Defendant's policy of inaction explicitly in their Complaint. Rec. Doc. 1 at ¶ 7. Plaintiffs also set forth lengthy facts as outlined above. Defendant does not contest that it did not act. Rather, it maintains that it could not act, because it did not have the authority to dictate the policies of the Library Board. Rec. Doc. 11-1 at pg. 8. It is true that the Library Board sets its own policies pertaining to library matters. It has been granted that autonomy *by Defendant City-Parish* through designation of final policymaker status, as outlined extensively above. That is one reason why the City-Parish is liable. But the City-Parish is also not powerless to stop unconstitutional actions being taken by one of its agencies, and instead declined to do so.

Defendant Lafayette City-Parish Government retains general power over all agencies created by its authority. Lafayette City-Parish Consolidated Government Home Rule

CHARTER § 7-09. Library boards of control and similar agencies exercise the authority of the local political subdivision—here the Defendant City-Parish Consolidated Government. *See* La. Rev. Stat. § 33:1415. Indeed, one opinion that Defendant cites from the Louisiana Attorney General on the subject of library boards of control powers explicitly states that, "[t]he governing authority has power over the agencies it creates." La. Att'y. Gen. Op. 16-0163. The Attorney General opines that the statutory authority given to the Library Board of Control by the Defendant City-Parish may supersede that of parish council *as to the adoption of rules and regulations for its own government and that of the library*. That is the final policymaker designation discussed *supra*.

<u>Defendant conflates the delegation of final policymaker status for some purposes with an abdication of all powers over the Library Board</u>. This reading is wrong. Delegation of final policymaker status to Defendant Judge for the purposes of conducting Library Board meetings and setting Library Board policies does not mean that the Defendant City-Parish retains no authority over the conduct of its appointees. The assertion that the Defendant City-Parish government can take no action to protect the public when one of its appointees violates the law is in tension with well-established authority granted to parish governments. The City-Parish retains an *ex officio* seat and provides legal advice to Defendant Judge precisely because the City-Parish remains the legal entity accountable to citizens.

Most specifically, Defendant City-Parish retains the ability to remove members for cause, as in the case of Defendant Judge. Library Board of Control members are appointed for set terms, by ordinance. As Defendant's note, the Attorney General has opined that Library Board of Control members can be removed *for cause*. Rec. Doc. 11-1 at pg. 12, *citing* La. Atty. Gen. Op. No. 01-29; La. Atty. Gen. Op. No. 95-452. Cause for removal would certainly encompass establishing policies that violate the First Amendment or the open meetings laws, as the statutory authority

11

creating the Library Board of Control explicitly requires it to conduct itself in accordance with the law.

> The board shall have authority to establish rules and regulations for its own government and that of the library *not inconsistent with law*….

LAFAYETTE, LA CODE OF ORDINANCE §54-2(c), *emphasis added*.[5] There is no question that Defendant City-Parish can remove Defendant Judge for cause for violating the law. It also could have chosen not to appoint him as final policymaker for the Parish in the first instance. Yet in its brief, Defendants assert they have no authority over the Library Board of Control's policies—even where its members are breaking the law.

The Defendant City-Parish is aware of its oversight authority over Defendant Judge's conduct. The Lafayette Parish Council openly discussed the legality of removing Defendant Judge in August 2022 due to dissatisfaction with his performance. Andrew Capps, *Can appointed Lafayette Library Board members be removed? Council asking amid controversies,* DAILY ADVERTISER (Aug 14, 2022). This was not the first time the topic arose. In a 2018 meeting, the City-Parish considered a resolution to denounce a "Drag Queen Story Time" library event, wherein the City-Parish attorney advised that the council can remove board members for neglect of their duties. Ben Myers*, Drag Queen Story Time still happening after Lafayette council avoids taking position on it*, ACADIANA ADVOC. (Sep. 18, 2018). In the instant case, the Defendant City-Parish could have removed Defendant Judge for cause. It could have offered guidance on the open meetings law and the First Amendment. It could have the law department (which advises the

---

[5] The Louisiana Attorney General recently reversed a prior opinion and went a step further to opine that local governments retain the authority to remove library board of control members for no cause. La. Ag. Op. 23-0015. Plaintiffs herein take no position as to whether the Attorney General Opinion 23-0015 (allowing removal of library board members with no cause) is correct as a matter of law. This opinion is of questionable accuracy as it contradicts previously-issued guidance, and is seemingly in conflict with other local and state laws providing for the protection of appointments made for a finite term. That question need not be resolved in this case, because it is clear that board members can be removed for cause for violating the law. A parish is not required to maintain an appointee when they break the law, and indeed it has an obligation to protect the public from such.

Library Board) instruct Defendant Judge to correct course. It could offer a First Amendment and open meetings law training. It could pass a resolution. But instead, it did nothing. And doing nothing is "a 'deliberate' or 'conscious' choice" by the City-Parish that served as the moving force for violations." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

This mistake over the City-Parish's designated policymaker and de facto policies vitiates the remainder of Defendant's brief, and the cases Defendant relies upon to argue contrarily are inapplicable and materially distinguishable. Defendant relies upon *Belcher v. Lopinto*, which concerned whether a parish could be held responsible for the actions of a sheriff's office under a theory of a policy of non-action. The *Belcher* court declined to hold a parish liable for a policy of a sheriff's office because the sheriff's office is independent of the governing authority by operation of the Louisiana Constitution. The sheriff is its own constitutional office and independent political subdivision and is singularly responsible for jail management. La. Rev. Stat. § 42:62. The *Belcher* court expressly noted that the parish was not liable because the sheriff's powers do not flow from a local ordinance, but rather flow from the state constitution. ("'Sheriffs in Louisiana are final policy makers with respect to management of the jail.... [This] policy-making authority over management of the jail is not the result of a delegation from the Parish or any other local government entity,' but rather, the Louisiana Constitution." *Belcher v. Lopinto*, 492 F. Supp. 3d 636, 649 (E.D. La. 2020)).

*Belcher* is actually helpful to Plaintiffs' position, because in contrast to sheriff's offices, library boards of control operate on delegated authority from local governments. La. Rev. Stat. § 25:214. Lafayette's Code of Ordinances establishes the Board of Control precisely through this delegation. LAFAYETTE, LA CODE OF ORDINANCES § 54-1. As Defendant asserts, Lafayette City-Parish saw fit to delegate policies for the governance of their business to their *chosen* Library

13

Board members. Rec. Doc. 11-1 at pg. 9. It did not, however, create the library board as its own juridical entity. Therefore, Mr. Judge is the municipal policymaker for the City-Parish, unlike the sheriff's office in *Belcher*.

Second, for its position that the Defendant City-Parish is not liable for the actions of the Defendant Judge, Defendant cites to employment discrimination claims in which parishes were not responsible for library-specific actions. Rec. Doc. 11-1 at pg. 9. *Douglas v. St. John the Baptist Par. Library Bd. of Control*, No. 21-599, 2021 U.S. Dist. LEXIS 117987 (E.D. La. June 24, 2021) and *Dyas v. City of Shreveport*, No. 16-1607, 2017 U.S. Dist. LEXIS 138542 (W.D. La. Aug. 28, 2017). However, plaintiffs in those two cases did not "[allege] any official policy of the City or of the Parish at all, let alone that there was a policy promulgated by a City or Parish policymaker that was the moving force behind the violation of their constitutional rights." *Dyas*, 2017 U.S. Dist. LEXIS 138542, at *11 *4; *see also Douglas*, 2021 U.S. Dist. LEXIS 117987 at *1. Here, Plaintiffs have so alleged and these cases are inapposite.

And finally, Defendant City-Parish points to *Harris v. Monroe Cnty. Pub. Libr. Bd. Of Trustees*, a district court case from southern Alabama, for the argument that Plaintiffs cannot show that Defendant City-Parish was the moving force behind their injuries. Rec. Doc. 11-1 at pg. 13. However, *Harris* is another employment case centered on discrimination in the workplace in which the complaining employee failed to show involvement of the policymaker in her complaints. *Harris v. Monroe Cnty. Pub. Libr. Bd. Of Trustees*, No. CV 19-00265-CG-N, 2020 WL 3344316, at *6 (S.D. Ala. May 22, 2020), *report and recommendation adopted*, No. CV 19-0265-CG-N, 2020 WL 3350401 (S.D. Ala. June 17, 2020). *Harris* does not exculpate the Defendant City-Parish in the instant case.

In contrast to *Harris* and the other cases cited by Defendant, Plaintiffs herein have alleged specific facts to establish municipal liability. Defendant City-Parish maintained a policy of non-action despite direct notice of Judge's policies. Because the City-Parish did not act, Judge's unlawful actions culminated in the unlawful removal of Brevis from a public meeting in January 2023. The City-Parish simply cannot appoint untrained individuals to govern a public agency and then feign powerlessness when those appointed leaders violate the law.  Plaintiffs have alleged a policy of non-action plausibly sufficient to trigger *Monell* liability at this stage of the proceedings adequate to survive a motion to dismiss and should be allowed to proceed to prove their case.

> **3.    Liability Attaches Because the City-Parish Has Failed to Properly Train or Supervise Defendant Judge.**

Liability also attaches to municipalities where a plaintiff can show "1) the [municipality] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the Plaintiffs' rights; and 3) the failure to train or supervise constituted deliberate indifference to the Plaintiffs' constitutional rights." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018).

Despite the statutory authority to oversee the Library Board of Control, Defendant admits that it has taken no steps to train Defendant Judge or indeed any Board of Control member on the constitutional protections of the First Amendment. Rec. Doc. 1 at ¶ 7; Rec. Doc. 11-1 at pg. 10. Defendant argues that it has no duty to do so because Mr. Judge is not an employee of the Lafayette City-Parish Government. Rec. Doc. 11-1 at pg. 10. Defendant further argues that no prior incidents would have provided actual or constructive notice to the Parish Council of the constitutional deficiencies in their oversight of the Library Board of Control. Rec. Doc. 11-1 at pg. 11. These arguments miss the mark.

First, although Defendant Judge is not an employee of the Lafayette City-Parish Consolidated Government, in his capacity as President of the Library Board of Control, he is a person acting under color of "any statute [or] ordinance […]." 42 U.S.C. § 1983. As the governing authority for the City-Parish, the City-Parish Council names and appoints members to the Library Board of Control. La. Rev. Stat. § 25:214; Lafayette, LA Code of Ordinances § 54-2(a). As such, the City-Parish decides who will serve in a policymaking position, appointing the members who will oversee meetings subject to the open meetings law and First Amendment. *See* La. Rev. Stat. § 42:14(A), *Chiu v.Plano Indep. Sch. Dist.*, 260 F. 3d 330, 346 (5th Cir. 2001) (describing public forums and First Amendment protections at public forums).

"In resolving the issue of a [municipality's] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Although Defendant Judge is appointed rather than employed by Defendant City-Parish, he is authorized by the City-Parish to oversee Board of Control meetings and must do so in a manner that does not violate the open meetings laws or the First Amendment. Because of the duties assigned to Defendant Judge, and because of the predictable risk of constitutional violations, Defendant City-Parish had a duty to train Defendant Judge to protect the constitutional rights of Lafayette residents. *City of Canton, Ohio*, 489 U.S. 378 at 390.

Defendant correctly notes that for liability to attach for a failure to train, that failure "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Delacruz v. City of Port Arthur*, No. 1:18-CV-11, 2019 WL 1211843, at *14 (E.D. Tex. Mar. 14, 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Plaintiffs have asserted repeated, factually identical violations of the First Amendment over the course of

several months, which would put Defendant City-Parish on notice, as well as the highly publicized controversial nature of Mr. Judge's tenure as the president of the Library Board of Control. See Rec. Doc. 1 at ¶ 13. "The disposition of the policymaker may be inferred from his conduct after the events [giving rise to the constitutional violation]." *Collins v. City of New York*, 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985)).

Plaintiffs have provided enough particular facts, taken as true at this stage of the proceedings, for this Court to conclude it plausible that they can show a constitutional violation that Defendant City-Parish should have trained or supervised to prevent. Plaintiffs plead that as Board President, Defendant Judge presided over attempts to remove an award-winning book from the shelves. Rec. Doc 1 at ¶ 14. Plaintiffs further plead that Defendant Judge notoriously presided over an attempt at firing an award-winning librarian, an attempt that was later revealed to be baseless. Rec. Doc. 1 at ¶ 16. Plaintiffs plead that community members have frequently spoken out against these efforts at censorship. Rec. Doc. 1 at ¶ 17. Plaintiffs plead that Defendant Judge posted a criminal disturbing the peace statute outside of meetings and threatened to remove speakers for violating the statute, without mentioning that the United States Supreme Court and Louisiana Supreme Court have limited the statute's language more than 60 years ago. Rec. Doc. 1 at ¶¶ 18—23. Plaintiffs plead that Defendant Judge threatened to remove speakers who used "confrontational" or "derogatory" speech without defining these categories of speech, leaving speakers to guess as to whether they would be removed. Rec. Doc. 1 at ¶¶ 22—25. Plaintiffs plead that Defendant Judge as policymaker has repeatedly engaged in viewpoint discrimination favoring those who agree with him. Rec. Doc. 1 at ¶ 28. This includes his viewpoint-discriminatory ejection of Plaintiff Brevis from the open public forum, which the City-Parish delegated to his authority.

Rec. Doc 1 at ¶ 64. Judge's efforts were so pervasive that they made local and national headlines and drew the ire of Lafayette Parish Councilmembers, as the record will show once discovery commences.[6]

In short, Defendant's assertion of a lack of any knowledge of any cause for concern around Defendant Judge's conduct is not tenable. Plaintiffs have alleged sufficient facts to show that Defendant City-Parish had actual notice that Defendant Judge – the presiding officer of Board of Control meetings – lacked observance of the First Amendment and open meetings law. Defendant City-Parish's failure to train or supervise Defendant Judge under these facts amounts to deliberate indifference to Plaintiffs' speech rights.

It is settled law that public officials may not engage in viewpoint discrimination. *See Heaney v. Roberts*, 846 F. 3d 769, 801 (5th Cir. 2017) ("It is beyond debate that the law prohibits viewpoint discrimination in a limited public forum."). In keeping with this and First Amendment principles, Louisiana law contemplates removal from public meetings only for willful disruptions to the extent that orderly conduct of the meeting is seriously compromised. La. Rev. Stat. § 42:17(C). Defendant City-Parish's failure to take any constructive action to train Judge in the First Amendment rights of Lafayette citizens – despite national and local attention on Defendant Judge's actions to censor critics – caused Defendant Judge to violate Plaintiffs' First Amendment rights.

Accordingly, Plaintiffs plead sufficient facts to show that Defendant City-Parish had a duty to supervise and train Defendant Judge, who was appointed and authorized to make decisions and oversee Board of Control meetings; there was a causal connection between the failure to train

---

[6] *See* John Burnett, *Conservative Christian groups are targeting Louisiana libraries*, Nat'l Pub. Radio (5:10 A.M. Aug. 30, 2022) https://www.npr.org/2022/08/30/1120023684/conservative-christian-groups-are-targeting-louisiana-libraries#:~:text=Conservative%20Christian%20groups%20are%20targeting%20Louisiana%20libraries%20A%20conservative%20Christian,the%20Year%20for%20her%20opposition; Claire Taylor, *Lafayette library board meeting changes may have 'chilling effect' on public speech, law clinic warns,* ACADIANA ADVOC. (Oct. 23, 2022) https://www.theadvocate.com/acadiana/news/lafayette-library-board-meeting-changes-may-have-chilling-effect-on-public-speech-law-clinic-warns/article_1d2f76c4-514c-11ed-a026-d72dadd00bb2.html

Defendant Judge and the violation of Plaintiffs' rights; and Defendant-City Parish's failure to train constituted deliberate indifference to Plaintiffs' constitutional rights.

For the foregoing reasons, Plaintiffs have stated a claim for relief against Defendant City-Parish and should be allowed to proceed to discovery.

## II. Plaintiffs Adequately Pled a Claim for Relief Against Defendant City-Parish Pursuant to the State Open Meetings Law

In addition to claims under the First Amendment, Plaintiffs seek recovery herein for Defendants' violations of the Louisiana open meetings laws. Louisiana law provides a cause of action to anyone who has been denied any right conferred by the open meetings law or anyone who has reason to believe that the law's provisions have been violated. La. Rev. Stat. § 42:25(C). Plaintiffs may seek injunctive relief, declaratory relief, and an award of civil penalties. *See* La. Rev. Stat. § 42:26. If Plaintiffs prevail in whole or in part on the issues pertaining to the open meetings law, their attorneys' fees and costs "shall be awarded." *See* La. Rev. Stat. § 42:26(C).

Defendant Judge affixed a misleading excision of Louisiana's disturbing the peace statute, and stationed law enforcement officers at the meetings. *See* La. Rev. Stat. § 42:12(B); Rec. Doc 1 at ¶¶ 18- 20, 21, 26, 34- 37. At the start of every meeting, Defendant Judge threatens to eject persons for reasons not allowed by Louisiana law. *Compare* La. Rev. Stat. § 42:17(C), *to* Rec. Doc 1 at ¶¶ 22–26. These policies "circumvent the intent of the open meetings law." *See* La. Rev. Stat. § 42:14(B).

Plaintiff Brevis was speaking during a period for open comment at a Library Board meeting. Rec. Doc. 1 at ¶ 32. Open comment periods of public meetings are subject to the open meetings law. Rec. Doc. 1 at ¶ 11, La. Rev. Stat. § 24:14(D). Plaintiff Brevis did not interrupt the conduct of the meeting. Rec. Doc. 1 at ¶ 37. In response to comments she made, Brevis'

microphone was silenced during her allotted time. Rec. Doc. 1 at ¶ 33. Sheriff's deputies that removed Brevis stated only that they were doing so upon orders of Defendant Judge. Rec. Doc. 1 at ¶ 37.

The law requires that all public bodies conduct every meeting openly unless one of the specific statutory exceptions applies. *See* La. Rev. Stat. § 42:14(A). This broad, robust protection of citizens to "be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy" is narrowly excepted only for "persons who willfully disrupt a meeting to the extent that orderly conduct of the meeting is seriously compromised," who can then be removed. *See* La. Rev. Stat. §§ 42:12, 17(C). Plaintiff Brevis was ejected from a meeting in violation of this law and she has a claim for redress.

Plaintiff Brevis' statutory damages claims are personal to Defendant Judge, because "[a]ny member of a public body who knowingly and willfully participates in a meeting conducted in violation of this Chapter shall be subject to a civil penalty not to exceed five hundred dollars per violation. The member shall be personally liable for the payment of such penalty." La. Rev. Stat. § 42:28.

Plaintiffs' requests for declaratory relief and equitable relief are not personal to Defendant Judge, but extend to the Defendant City-Parish. This Court's jurisdiction and authority under the open meetings law encompasses "all necessary orders to require compliance with, or to prevent noncompliance with, or to declare the rights of parties under the provisions of this Chapter." La. Rev. Stat. § 42:26(B). Injunctive and declaratory relief is necessary to ensure that the rights of the public to open meetings are protected. *See* Rec. Doc 1 at ¶¶ 68-71; *see also* La. Rev. Stat. § 42:26(B). Both Plaintiffs are entitled to declaratory and injunctive relief to ameliorate the policies and practices of the Lafayette Library Board of Control that violate the open meetings law.

Defendant City-Parish moves for dismissal of this claim, arguing that Plaintiffs have not pled a colorable claim under Louisiana open meetings law because the Library Board of Control is independent of the Parish Council or any other City-Parish entity. <u>Defendant cites no authority for this position</u>. As detailed extensively above, the Library Board of Control is not a separate, independent entity capable of being sued. Defendant City-Parish cannot evade its obligation under the open meetings law for meetings conducted by its own duly delegated authorities. The law is clear that <u>every</u> <u>meeting</u> of a public body <u>must be open</u> unless closed for a precise exception. *See* La. Rev. Stat. § 42:14(A). And the law is explicit on what constitutes a meeting of a public body. *See* La. Rev. Stat. § 42:13(A)(3). Because the open meetings claims are premised on state law rather than federal the City-Parish may be held responsible for the actions of its subordinates without the necessity of proving a *Monell* theory of liability. But the City-Parish simply is the proper entity susceptible to equitable relief for Lafayette citizens seeking to enforce the open meetings law because the Library Board is an entity created by the Parish.

Separately, Defendant argues that dismissal of Plaintiffs' open meetings claims is appropriate because the language used by Brevis prior to her ejection from the meeting was "potentially inflammatory" and that "it is not unreasonable to conclude" that her "potentially inflammatory" commentary "may have been disruptive" such as would allow her removal from the meeting. Rec. Doc. 11-1 at pg. 15. This argument is inconsistent with Louisiana law as cited above, and acts as an inversion of the Rule 12 dismissal standard.

The only provision in the open meetings law that allows for removal of an individual from a public meeting solely addresses circumstances where an individual is willfully disruptive to the extent that the orderly conduct of the meeting is seriously compromised. La. Rev. Stat. § 42:17(C). In fact, this is the only place in the open meetings law addressed to limitations on the public at all.

21

No Louisiana court has interpreted "willfully disruptive" to reach Plaintiff Brevis's conduct. To the contrary, it has a very limited interpretation, and Defendant cites none of the cases applying subsection 17(C) in its brief. Louisiana law <u>does not</u> allow for removal of members of the public for "potentially inflammatory" speech at public meetings. Indeed, all speech directly challenging government actors is "potentially inflammatory." Defendant cites no authority that would allow removal of Brevis. *See* Rec. Doc. 11-1 at pgs. 15-20.

Additionally, at the Rule 12 stage of the proceedings, all of Plaintiffs' allegations are to be taken as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendant asks this Court to turn the Rule 12 analysis upside down and speculate whether Brevis' speech is "<u>potentially</u> inflammatory" and her commentary "<u>may have been</u> disruptive." Rec. Doc. 11-1 at pg. 15 (emphasis added). Such speculation, which is factually false, is procedurally improper. Simply put, Defendant City-Parish seeks to dispute the evidence at the wrong stage of these proceedings. Plaintiffs are entitled to a presumption of the veracity of their pleading and need only state adequate facts to plausibly state a claim for violation of the open meetings law—which they have done. Defendant's motion to dismiss Plaintiffs' claims under Louisiana open meeting laws should be denied and this case should be allowed to proceed to discovery.

### III.     Plaintiffs' Prayers for Relief are Proper

The final five pages of Defendant City-Parish's briefing focus on the availability of certain forms of relief as against the City-Parish.

"Local governing bodies. . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy . . . or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Because the Plaintiffs

have plausibly alleged deprivation of right under the First Amendment of the United States Constitution—for facially deficient policies, vague policies, overbroad policies, as-applied violations, content-based discrimination, viewpoint-based discrimination, and retaliation—the law would hold Defendant City-Parish "liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" in the event that Plaintiffs prevail on any of those claims. 42 U.S.C. § 1983.

"[T]here can be no doubt that § 1 of the Civil Rights Act was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights." *Monell* 436 U.S. at 700–01. The City-Parish asserts that declaratory relief is unavailable because it denies that liability attaches to the City-Parish for any claim whatsoever. Rec. Doc. 11-1 at pg. 16. This argument turns entirely on whether there is liability attributable to the City-Parish. Thus, Defendants admit declaratory relief is available where Plaintiffs' claims against Defendant survive, as briefed above.

Defendant makes an identical argument about the unavailability of injunctive relief against the City-Parish, arguing that injunctive relief is unavailable if no liability is found. Rec. Doc. 11-1 at pg. 16. This truism does not dispute the equitable grounds for relief when a First Amendment violation is shown. Accordingly, Defendant's argument fails because it inverts the order of these proceedings to prematurely address issues resolved in discovery. If Defendant City-Parish is found liable for the violations alleged herein, then declaratory or injunctive relief will be appropriate to remedy those violations.

Although not necessary of immediate resolution, Plaintiffs note that Defendant City-Parish misstates the law pertaining to injunctive relief in constitutional cases. Defendant relies upon a commercial arbitration dispute to challenge Plaintiffs' right to injunctive relief where monetary

damages also are awarded. Rec. Doc. 11-1 at pg. 17. This reliance is misplaced. In the context of First Amendment jurisprudence, a plaintiff seeking injunctive relief against a municipality must show that the harm deserving of redress is being caused by a municipal policy or custom. *See, e.g., Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 31 (2010). Even short deprivations of First Amendment rights constitute irreparable harm. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976). The balance of harms normally favors granting relief if the defendant's conduct is unconstitutional. *See, e.g., Higher Society of Indiana v. Tippecanoe County, Ind.*, 858 F.3d 1113, 1116 (7th Cir. 2017). Unlike other areas of the law, in constitutional violations there is no requirement that injunctive relief be withheld where monetary compensation is available. *See, e.g., Harrington v. Harris*, 118 F.3d 359, 364 (5th Cir. 1997) (granting plaintiff injunctive relief and compensatory damages in a Section 1983 action). In a First Amendment context plaintiffs must simply show injury, causation, and redressability. *Seals v. McBee*, 898 F.3d 587, 591 (5th Cir. 2018), as revised (Aug. 9, 2018). Because the issuance of an injunction in such cases is a question of constitutional harm, injunctive relief is not precluded by a necessity of showing inadequacy of monetary compensation. Civil rights plaintiffs can (and usually do) seek injunctive relief and damages.

As with the preceding sections, Defendant's argument about the availability of compensatory damages rises and falls on the question of whether the City-Parish has liability in the matter at all. Defendant correctly notes that compensatory damages are available to plaintiffs in 42 U.S.C. § 1983 cases for injuries including embarrassment, suffering and emotional distress. Rec. Doc. 11-1 at p. pg. 19. Plaintiffs will have to prove damages after discovery and once liability is decided, but dismissal of this prayer for relief is not appropriate at this stage.

At this stage of the proceedings Plaintiffs do not have the burden of pleading specifics of damages sought. Plaintiffs pled that they have been harmed by Defendants' policies and practices.

Rec. Doc 1 at ¶¶ 37, 39, 63, 64, 66, 67. Unlike state courts, federal courts still operate under Fed. R. C. Pro. 8 notice pleading requirements, which Plaintiffs have satisfied by placing Defendants on notice of their intent to seek compensatory and punitive damages for injuries. Defendant cites no law requiring Plaintiffs to plead damages any more specifically than they have done. Plaintiffs are entitled to recover for injuries such as emotional distress and mental anguish, once those claims are supported by the record. *See Brady,* 145 F.3d at 719. Discovery will show the extent to which Plaintiffs' rights can be vindicated by compensatory damages, but there is no question that pleading same at this stage of the proceedings is appropriate.[7]

### IV.    Plaintiffs are Entitled to Seek Attorneys' Fees and Costs

The award of attorneys' fees and costs under 42 U.S.C. § 1988 is likewise prematurely challenged. "In any action under 42 U.S.C. § 1983, the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "A request for attorney's fees or costs . . . are merely a 'byproduct' of a suit that already succeeded, not a form of redressability." *Uzuegbunam,* 141 S.Ct. 792 at 801 (2021) (citing *Steel Co.*, 523 U.S. at 107, 118 S. Ct. 1003; *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990)). At this stage in the pleadings, objections to the award of attorneys' fees and costs under either 42 U.S.C. § 1988 or Louisiana law are premature.

---

[7] Defendant does not move to dismiss Plaintiffs' prayer for nominal damages, so Plaintiffs do not brief same. Nominal damages claims stand on their own, independent of any other claim for damages. "Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages. They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages." *Uzuegbunam* 141 S. Ct. at 800 (2021).

V.    **Claims for Punitive Damages are Personal to Defendant Judge.**

The Parties agree that the Lafayette City-Parish is not liable for claims for punitive damages. Rec. Doc. 11-1 at pg. 19. This claim is personal to Defendant Judge in his individual capacity and not attached to the municipality. Plaintiffs explicitly plead punitive damages only against Judge in his individual capacity. Rec. Doc. 1 at pg. 14. Plaintiffs' Complaint is explicit on this point and Defendant's motion should be denied on this point as there is no claim to be dismissed.

VI.    **Conclusion**

For the reasons detailed above, Plaintiff respectfully requests that the Court deny the Defendant's motion to dismiss and that this matter be allowed to proceed to discovery. Should this Court find any deficiency in Plaintiffs' pleading, Plaintiffs respectfully request an opportunity to amend the Complaint.

Respectfully submitted,

TULANE FIRST AMENDMENT CLINIC

/s/ Katie M. Schwartzmann
Katie M. Schwartzmann La Bar No. 30295
Virginia Hamrick, La Bar No. 40392
Andrew Perry, Student attorney
Christopher Seelie, Student attorney
6329 Freret Street, Suite 130
New Orleans, La 70118
kschwartzmann@tulane.edu
vhamrick@tulane.edu
cperry3@tulane.edu
cseelie@tulane.edu
o: (504) 862-881