# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**LILLIAN LYNETTE MEJIA ET AL**      **CASE NO.  6:23-CV-00307**

**VERSUS**      **JUDGE ROBERT R. SUMMERHAYS**

**LAFAYETTE CONSOLIDATED**      **MAGISTRATE JUDGE CAROL B.**
**GOVERNMENT ET AL**      **WHITEHURST**

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 53), filed by Mark Garber, in his official capacity as Lafayette Parish Sheriff; Rusty Santiny, in his individual and official capacities; and Sara Orgeron, in her individual and official capacities. ("LPSO Defendants"). Plaintiffs oppose the Motion (Rec. Doc. 81), LPSO Defendants replied (Rec. Doc. 83), and Plaintiffs filed a Sur-Reply (Rec. Doc. 87).  The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.  Considering the pleadings, the law, and the arguments of the parties, and for the reasons fully explained below, it is RECOMMENDED that LPSO Defendants' Rule 12(b)(6) Motion be GRANTED in part and DENIED in part.

**Factual Background**

Plaintiffs filed this 42 U.S.C. § 1983 action against the Lafayette Consolidated Government and Robert Judge in his official and individual capacities as President of the Lafayette Public Library Board of Control on March 7, 2023, seeking declaratory relief, injunctive relief, and damages alleging violation of their First and Fourteenth Amendment rights as well as the Louisiana Open Meetings Law. (Rec. Doc. 1). On December 29, 2023, Plaintiffs filed a Motion for Leave to Amend Complaint seeking to add, in pertinent part, Defendants Garber, Santiny, and Orgeron. (Rec. Doc. 33). On February 26, 2024, the Motion was granted. (Rec. Doc. 49).

Per the Amended Complaint, Defendant Garber is the Sheriff of Lafayette Parish entrusted with training and supervising the deputies of the Lafayette Parish Sheriff's Office. (Rec. Doc. 50, ¶ 10). According to Plaintiffs,

> [Defendant] Garber arranged for Lafayette Parish Sheriff's deputies to be present at Lafayette Public Library Board of Control meetings. Sheriff Garber worked with Defendant Judge to place an excised portion of Louisiana Revised Statute 14:103 on the entrance of the doorway at Lafayette Public Library Board of Control meetings, to be enforced by Defendant Judge and Sheriff's deputies. Sheriff Garber maintained policies and practices of his office allowing for the wrongful removal of members of the public from public meetings. He also failed to train and supervise his deputies in First Amendment protected speech.
> *Id.*

2

Defendants Santiny and Orgeron are deputies in the Lafayette Parish Sheriff's Office who were assigned to work the Lafayette Public Library Board of Control ("LBOC") meeting on January 9, 2023. (*Id.* at ¶¶ 11-12). Plaintiffs allege that Defendants Santiny and Orgeron stopped Plaintiff Brevis from speaking and removed her from the meeting at the Board President's request without articulating any legal explanation. (*Id.* at ¶¶ 11-12 & 40-41). Plaintiffs contend that these policies and actions violate the First Amendment and the Louisiana Open Meetings Law. (Rec. Doc. 50). Counts One through Four of Plaintiffs' First Amended Complaint allege that LPSO Defendants' policies are unconstitutional and violate the First Amendment because they are overly broad, vague, and content and viewpoint-based restraints on speech. (*Id.* at ¶¶ 49-72). In Count Five of the First Amended Complaint, Plaintiffs allege that Defendants Santiny and Orgeron, while acting under the color of law, took adverse retaliatory action against Plaintiff Brevis. (*Id.* at ¶¶ 73-75). In Count Six of the First Amended Complaint, Plaintiffs allege that Plaintiff Brevis's rights under the Louisiana Open Meetings Law were violated when she was ejected from the LBOC Meeting. (*Id.* at ¶¶ 76-79).

While the LSPO Defendants maintain that they did not violate Plaintiff Brevis's right to free speech because the LBOC meeting was a limited use public forum whereat reasonable restrictions may be placed on speech, they also assert that

they are not permissible defendants on the basis of *Monell* liability and qualified immunity.  (Rec. Doc. 53-1, p 9).

## Applicable Law

### I.    Law applicable to Rule 12(b)(6)

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

4

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its

5

face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556). See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008).

## II.    *Monell* **claims against Defendant Garber in his official capacity.**

Plaintiffs maintain Defendant Garber, in his official capacity as Sheriff of Lafayette Parish, is liable for LSPO's unconstitutional policies, as a final policymaker, and for Plaintiff Brevis's removal due to his failure to train deputies. (Rec. Doc. 50, ¶ 10). Suing a municipal official in his or her official capacity is simply another way of alleging municipal liability. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 n. 55 (1978). Accordingly, any claims against Defendant Garber are to be treated as claims against LPSO. LPSO may not be held liable under Section 1983 on a theory of vicarious liability. *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), *cert. denied sub nom. Hicks-Fields v. Harris Cty., Tex*., 583 U.S. 1014, 138 S. Ct. 510 (2017). It may, however, be liable under *Monell* when allegedly unconstitutional conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. In other words, the

6

unconstitutional conduct at issue must be directly attributable to the municipality through some sort of official action.

To state a Section 1983 *Monell* claim, a plaintiff must allege facts demonstrating that (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force for the violation of a constitutional right. *Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020). Caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019). Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Id*.

Here, Plaintiffs generally allege that Defendant Garber "maintained policies and practices of his office allowing for the wrongful removal of members of the public from public meetings," but fail to point to any LPSO written policy statements, ordinances, or regulations to support their contention. (*See* Rec. Doc. 50, ¶ 10). Accordingly, the Court will address whether Plaintiffs have sufficiently alleged a widespread practice that is so common and well-settled so as to constitute

a custom that fairly represents municipal policy or has sufficiently alleged that a final policymaking authority performed the specific unconstitutional act.

### A. Widespread Practice.

To plead a *Monell* claim on the basis of a wide-spread practice, the plaintiff must plead facts showing "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Specifically, a plaintiff "must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281,285 (5th Cir. 2020). The facts pled must also show incidents similar to the conduct at issue in the instant case—that is, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rei McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). A plaintiff is required to plead more than a list of past actions alleged to be unconstitutional; a plaintiff must place these past occurrences in context to support the inference that the municipality knew about and accepted a wide-spread course of unconstitutional conduct. *Peterson*, 588 F.3d at 851 n.4.

Plaintiffs allege that the policies and practices of Defendant Garber's office allow for the wrongful removal of members of the public from public meetings. (Rec. Doc. 50, ¶ 10). Specifically, Plaintiffs contend that Defendant Garber arranged

for LPSO deputies to be present at the LBOC meetings and worked with the Board President to place an excised portion of the Louisiana disturbing the peace criminal statute to be enforced by the Board President and/or the deputies. (*Id*.). Plaintiffs allege that Sheriff's deputies "have been posted at [LBOC's] public meetings" and that "[s]taring in September 2022, [the Board President] had the deputies flank the Board members and face the members of the public in attendance. (*Id*. at ¶ 25). Plaintiffs also allege that on January 9, 2023, Sheriff's deputies silenced and removed Plaintiff Brevis from an LBOC public meeting at the Board President's direction. (*Id*. at ¶¶ 38-41).

LPSO Defendants argue that these allegations do not show a wide-spread practice or pattern that rises to the level of municipal policy. (Rec. Doc. 53-1, pp. 12-15). This Court agrees. Plaintiffs' allegations are specific to LBOC meetings and/or the January 9, 2023 meeting and fail to plead facts showing "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney*, 863 F.2d at 1184.

### B. Single Act of Policymaker.

Plaintiffs argue that they need not allege sufficiently numerous prior incidents because "[e]ntities may be liable for single episodes of conduct that are not part of a pattern of wrongdoing." (Rec. Doc. 81, p. 15) The Fifth Circuit recognizes a single incident exception, particularly in failure to train cases, whereby, in rare cases, "the

unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 64, 131 S. Ct. 1350 (2011); *See also Brown v. Bryan Cnty., OK,* 219 F.3d 450 (5th Cir. 2000).

An unconstitutional policy may also be found when a policymaker performs the specific act that forms the basis of the § 1983 claim." *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017), citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482, 484–85, 106 S.Ct. 1292 (1986)); *see also Anderson v. City of McComb*, 539 F. App'x 385, 388 n.2 (5th Cir. 2013) ("When the policymakers are the violators, no further proof of municipal policy or custom is required.").  Plaintiffs have not alleged that Defendant Garber was even present at the LBOC meeting or that he was the individual who performed the specific act of removing Plaintiff Brevis from the meeting.  Rather, Plaintiffs argue that Defendant Garber "chose to station his deputies at the meetings as enforcers of unconstitutional policies" and that the deputies removed Plaintiff Brevis from the meeting "pursuant to policies specifically approved by [Defendant Garber] as final policymaker."  (Rec. Doc. 81, p. 15).  Thus, Plaintiffs do not adequately plead a *Monell* claim for performing a single or specific act against LPSO.  Accordingly, the Court will address Plaintiffs failure to train theory of *Monell* liability.

### C.  Failure to Train.

Plaintiffs allege, in pertinent part, that their rights were violated by Defendant Garber's failure to train and supervise his deputies in First Amendment protected speech.  *(*Rec. Doc. 50, ¶ 10.).   The Supreme Court has observed that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. 51, 61 (2011).  To state such a claim, a plaintiff must plead that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury.  *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex. 2020)(citing *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000)).

"Municipal liability doesn't attach merely because 'a particular officer may be unsatisfactorily trained' or 'an otherwise sound program has occasionally been negligently administered.'" *Taylor*, 488 F.Supp. 3d at 535 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989)).  For this Court, the focus must be on the *adequacy* of the training program in relation to the tasks the particular officer must perform.  *Taylor*, 488 F.Supp. 3d at 535 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).  Therefore, to defeat a motion to dismiss, the plaintiff must allege with specificity how the training program in effect is defective in this regard. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005).  Proof that the

plaintiff's injury "could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Id.* at 293.

Furthermore, the failure to train must reflect a "deliberate" or "conscious" choice by the municipality. "Deliberate indifference" is "a stringent standard of fault," one "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Taylor*, 488 F.Supp. 3d at 536 (citing *Connick*, 563 U.S. at 61). City policymakers are only considered to be deliberately indifferent when they are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, and they choose to retain that program. *Connick*, 563 U.S. at 61. A municipality's deliberate indifference typically requires a plaintiff to allege a pattern of similar constitutional violations by untrained employees. *Id.* at 62. A plaintiff must generally show that, given the duties assigned to specific officers or employees, "the need for more or different training is obvious, and the inadequacy is likely to result in the violation of constitutional rights." *City of Canton*, 489 U.S. at 390. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Connick,* 563 U.S. at 62.

Here, Plaintiffs allege that Defendant Garber "…failed to train and supervise his deputies in First Amendment protected speech." (Rec. Doc. 50, ¶ 10). Plaintiffs,

however, do not allege specific facts about the actual training protocols of the LPSO, nor do they describe any deficiencies in the LPSO's program in light of the assigned duties of Defendants Santiny and Orgeron. *See Taylor*, 488 F.Supp.3d at 536 (where the plaintiff failed to identify specific training protocols and how they were inadequate, he failed to sufficiently plead a claim for failure to train); *see also Snyder v. Trepagnie*r, 142 F.3d 791, 798 (5th Cir. 1998).

Considering the foregoing, Plaintiff has not sufficiently pled that the training procedures of the LPSO were inadequate. Plaintiffs have also failed to sufficiently plead a pattern of similar constitutional violations by untrained employees. Because of these deficiencies in Plaintiffs' pleading, Plaintiffs also have not shown the *causation* required by the third element. Thus, Plaintiffs do not adequately plead a *Monell* claim for failure to train against LPSO. The Court recommends dismissal of Plaintiffs' claims against Sheriff Mark Garber in his official capacity.

### III.  Claims against Defendants Santiny and Orgeron in their official capacity.

Plaintiffs argue that Defendants Santiny and Orgeron's removal of Plaintiff Brevis violated the First Amendment, the Open Meeting Law, and constituted First Amendment retaliation. They are sued in both their individual and official capacity. As stated above, it is well-settled that suing a municipal official in his or her official capacity is simply another way of alleging municipal liability. *Monell*, 436 U.S. at 690 n. 55. "Where official capacity claims are duplicative of claims against the

13

municipality itself, the official capacity claims should be dismissed." *Howell v. Town of Ball*, No. 12-951, 2012 WL 3962387 at *4 (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)). Here, Plaintiffs have filed suit against Mark Garber in his official capacity as Sheriff of Lafayette Parish and Sheriff's deputies Rusty Santiny and Sara Orgeron in both their individual and official capacities. (Rec. Doc 1).  This Court finds that the claims against Mark Garber in his official capacity constitutes a claim against the municipality and thus recommends dismissal of Plaintiffs' claims against Rusty Santiny and Sara Orgeron in their official capacities.[1]

## IV.    Whether Qualified Immunity protects Defendants Santiny and Orgeron individually.

Defendants Santiny and Orgeron argue that the claims against them in their individual capacity should be dismissed because they are entitled to qualified immunity.  The doctrine of qualified immunity shields officials from civil liability when their conduct "does not violate clearly established … constitutional rights of which a reasonable person would have known." *Senegal v. Sheriffs Dep't Beauregard Par.*, No. 16-1756, 2018 WL 2372641 at *4 (W.D. La. May 8, 2018) (citing *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Qualified immunity claims are

---

[1] The Court recognizes that it recommends dismissal of the redundant party, i.e. Defendant Garber, however, official capacity claims against Defendants Santiny and Orgeron would also fail under the same *Monell* reasoning.

analyzed through a two-step sequence where the court determines (1) whether plaintiff can "make out a violation of a constitutional right" and then (2) "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Moreover, the plaintiff must show that the official's conduct was objectively unreasonable "as measured by reference to clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Importantly, qualified immunity questions should be resolved at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Defendants Santiny and Orgeron argue that Plaintiffs' claims against them should be dismissed under the doctrine of qualified immunity because Plaintiffs failed to adequately plead facts establishing (1) a constitutional violation and (2) that their conduct was objectively unreasonable. (Rec. Doc. 53-1, pp. 17-20). When determining whether qualified immunity applies, the first inquiry is whether a constitutional right would have been violated on the facts alleged. Only after deciding that question may a court turn to whether the right at issue was clearly established at the relevant time. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

### A.  First Amendment Retaliation.

Plaintiffs allege that Defendants Santiny and Orgeron took retaliatory action against Plaintiff Brevis in silencing and removing her from the LBOC meeting

because of the content of her speech.  (Rec. Doc. 50, ¶ 75).  "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).  To prevail on a § 1983 claim for First Amendment retaliation, a plaintiff must show: 1) that he was engaged in constitutionally protected activity; 2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct. *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017).

Plaintiffs contend that the Board President ordered Defendants Santiny and Orgeron to silence and remove Plaintiff Brevis.  The only allegations of Defendants Santiny and Orgeron's actual involvement are that they removed Plaintiff Brevis from the meeting and "did not articulate any legal explanation as to why [Plaintiff] Brevis was being stopped from speaking beyond [the Board President's] instructions." (Rec. Doc. 50, ¶¶ 40-41).  At Count 5, Plaintiffs allege that Defendant's Santiny and Orgeron silenced and removed her from the meeting "because of the content of her speech," but the Amended Complaint is void of any allegations that Defendants Santiny and Orgeron themselves disagreed with the content of her speech.  Rather, Plaintiffs generally plead that Defendants Santiny

and Orgeron should have known that the Board President's request to have her removed was unconstitutional.

> [A] plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019)(internal citations removed).

Here, taking all of Plaintiffs' allegations as true, the party alleged to have "retaliatory animus" is the Board President, not Defendants Santiny and Orgeron. Accordingly, even assuming Plaintiffs have met their burden for elements one and two, they fail at element three: the defendant's adverse actions were substantially motivated by the constitutionally protected conduct. *See McLin* 866 F.3d at 696. Thus, Plaintiffs have failed to adequately plead facts establishing a first amendment retaliation constitutional violation against Defendants Santiny and Orgeron.

## B.  Free Speech Claims.

Plaintiffs also allege that LPSO Defendants' policies and the LBCO's policies are unconstitutional and violate the First Amendment because they are overly broad, vague, and content and viewpoint-based restraints on speech.  Plaintiffs further maintain that the silencing and removal of Plaintiff Brevis from the January 9, 2023

LBOC meeting was unconstitutional because she was prevented from exercising her

First Amendment right to free speech.

> As the Fifth Circuit has summarized:

> The First Amendment prohibits laws that "abridge[e] the freedom of speech." However, "the government need not permit all forms of speech on property that it owns and controls." Rather, the Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes."

> There are two broad categories of forums: (1) traditional and designated public forums and (2) limited public forums and nonpublic forums. Traditional public forums are places such as sidewalks, streets, and parks that have traditionally been devoted to assembly or debate. Designated public forums are places that the government has designated for the same widespread use as traditional public forums. Regulations on speech in traditional and designated public forums are subject to strict scrutiny review—they must be narrowly tailored to serve a compelling state interest.

*Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 426 (5th Cir. 2020)(internal

citations omitted).

> Here, the parties agree that the LBOC meeting public comment period

constitutes a limited use public forum:

> Limited public forums are places that the government has opened for public expression of particular kinds or by particular groups. Nonpublic forums are forums that are not open for public communication by tradition or designation. The government can restrict speech in a limited public forum or nonpublic forum as long as the restriction is (1) reasonable in light of the purpose served by the forum and (2) does not discriminate against speech on the basis of viewpoint.

*Id*. at 426–27 (internal citations omitted).

Plaintiffs contend the policies and restrictions imposed on the public at LBOC meetings are unreasonable, overly broad, vague, and discriminate against speech on the basis of viewpoint. (Rec. Doc. 50, ¶¶ 21-47). Specifically, Plaintiffs maintain that the posting of the excised portion of Louisiana Revised Statute 14:103 (the disturbing the peace criminal statute), the presence of Sheriff's deputies flanking the Board members and facing the members of the public, the verbal warnings given prior to the public comment section advising members of the public that they will be removed if their speech is deemed violative of the disturbing the speech statute, is confrontational or derogatory, or if they mention Board members by name are all unreasonable restrictions on speech that "reach a substantial amount of speech protected by the Constitution," and "fail to provide people of ordinary intelligence any fair notice of what kind of speech is permissible and what kind of speech will cause them to be ejected or arrested." (*Id*. at ¶¶ 48-60). Plaintiffs also allege that members of the public who share the same personal viewpoint of the Board President and/or Board members are permitted to engage in speech that arguably falls within the proscribed categories. (*Id*. at ¶¶ 32, 65-72).

While Plaintiffs maintain the policies as a whole are unconstitutional, they specifically point to the January 9, 2023 meeting when Plaintiff Brevis was silenced and removed. According to Plaintiffs, Plaintiff Brevis used her allotted time during

the public comment period to voice her disapproval of actions taken by the Board under the Board President's leadership.  (*Id.* at ¶ 36).  Plaintiff Brevis admits she identified some Board members by name.  (*Id.*). Specifically, Plaintiff Brevis stated that one particular Board member

> …stood on a street corner outside the library, protesting Drag Queen Story Time, grooming her children and others by her message that there is something pathologically wrong with certain gender and sexual identities, even as she claims to love everyone. We know Stephanie, Robert Judge, and groomers within the community have pushed false narratives…
> (*Id.* at ¶ 37.)

At this point, Plaintiff Brevis's microphone was silenced and Defendants Santiny and Orgeron removed her from the room at the Board President's request. (Rec. Doc. 50, ¶¶ 37-41). Plaintiffs point to other instances where speakers were permitted to speak despite engaging in similar rhetoric including the speaker following Plaintiff Brevis who was permitted to "attack the library's curation policies and assert that a book centering on a gay character reflected 'perversion' in the community."  (*Id.* at ¶ 42).  Plaintiffs also allege that other speakers have mentioned Board members or the Board President by name and were not silenced because they were praising the members and/or share the same viewpoint as the Board President. (*Id.* at ¶¶ 34-35). Plaintiffs note that "[n]o speakers who engaged in speech that aligned with [the Board President]'s own personal beliefs have been ejected from a public meeting." (*Id.* at ¶ 33).

Plaintiffs alleged facts, if taken as true, raise a right to relief above the speculative level. *See Bell Atlantic*, 127 U.S. at 555.  Taking all of the facts in the Amended Complaint as true and viewing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have alleged enough facts to state the constitutional claims raised in Counts One through Four of the Amended Complaint. However, as discussed above, the Court finds that the LPSO Defendants are not the appropriate defendants against whom to raise these claims because it was not the LPSO Defendants who engaged in viewpoint discrimination.

### C. Was Defendant Santiny's and Orgeron's Conduct Objectively Unreasonable.

Defendants Santiny and Orgeron maintain that "Plaintiffs fail to factually establish that no reasonable officer in the shoes of Defendants could have believed that the alleged action of Defendant Judge was unlawful." (Rec. Doc. 53-1 p. 20). Plaintiffs counter that "[n]o reasonable officer would have believed that the removal of a speaker, engaging in protected speech on a matter of public concern, was lawful in light of the clearly established law." (Rec. Doc. 81, p. 12).

A right is clearly established only if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). If the first step is met, i.e., the official's conduct violates an established right, then the second step is to determine whether the defendant's conduct was objectively reasonable. *Id*. Furthermore, the assessment

whether a "reasonable person" in the official's position would have known that his conduct would violate "clearly established" rights must be made on the basis of information actually possessed at the time by the official. *Anderson v. Creighton*, 483 U.S. 635 (1987). The qualified immunity test is deliberately designed to give protection "to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Court agrees with LPSO Defendants that this case is analogous to *Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017). *Heaney* involved a plaintiff who was silenced and then ejected from a city council meeting. *Id.* at 798. Similar to Plaintiff Brevis in the present case, the plaintiff in *Heaney* was speaking during the time allowed for public comment. *Id.* The plaintiff was eventually cut off by the presiding official at the meeting and not permitted to speak for the full allotted time. *Id.* The presiding officer declared that the plaintiff was being hostile and requested that a police officer remove the plaintiff from the meeting. *Id.* The plaintiff argued that the police officer who removed him from the meeting violated his constitutional rights. *Id.*

Similar to the present case, the plaintiff argued that the police officer was not entitled to qualified immunity on the First Amendment claim because the officer was the individual who actually effectuated the First Amendment violation by seizing

and removing the plaintiff. *Heaney*, 846 F.3d at 803.  In affirming the district court's

finding of qualified immunity, the Fifth Circuit concluded:

> [The officer] had no reason to believe that he was violating [the plaintiff's] First Amendment rights by following [the presiding official's] order. We agree with the district court that "[the officer] was not required to cross-examine and second-guess [the presiding official] regarding his First Amendment motives before acting." See *Collinson v. Gott*, 895 F.2d 994, 997 (4th Cir. 1990) (affirming qualified immunity for a sheriff's deputy who escorted a citizen out of a city council meeting upon receiving orders to do so from the presiding officer). [The officer] is entitled to qualified immunity on the First Amendment claim because his actions as sergeant-at-arms were not objectively unreasonable in light of clearly established law.
> *Id*. at 804.

> In rendering the initial decision, the district court opined:

> The Court recognizes that in this circuit police officers who merely carry out the orders of their superiors are not entitled to qualified immunity on that basis alone. And in this case [the presiding official] was not even [the officer's] superior on the police force. But members of the Gretna Police Department provide security at the council meetings…This Court is persuaded that no officer in [the officer's] position would have understood that acting in obedience to a presumptively valid request by the council chairman to remove a citizen following an argumentative exchange with a council member would violate that citizen's First Amendment rights.

*Heaney v. Roberts*, 147 F. Supp. 3d 600, 609–10 (E.D. La. 2015), aff'd in part,

dismissed in part, 846 F.3d 795 (5th Cir. 2017)(internal citations removed).

Notably, the *Heaney* Court declined to extend qualified immunity to the

presiding official because there was a question of fact regarding the presiding

official's motive in silencing the plaintiff.  *Id*.  Plaintiffs attempt to distinguish

23

*Heaney* from the present case arguing that *Heaney* was decided at the summary judgment stage and "included a physical altercation between the speaker and the police officer being sued." (Rec. Doc. 81, pp. 11-12). Plaintiffs' attempt fails.

First, qualified immunity questions should be resolved at the earliest possible stage in litigation. *Hunter*, 502 U.S. at 227. Second, the physical altercation allegations gave rise to Fourth Amendment, False Arrest, and battery and negligence claims against the officer – not the First Amendment claim – and were not relevant to the Court's qualified immunity determination. The plaintiff's argument in *Heaney* was the same as Plaintiffs' argument here – a reasonable officer should have known that silencing and removing a citizen engaging in protected speech was unlawful. For all the reasons stated above, that argument fails. The Court finds that Defendants Santiny and Orgeron are entitled to qualified immunity and recommends that the federal Constitutional claims against them in their individual capacities be dismissed.

## V.  <u>Louisiana Open Meetings Law</u>

Plaintiffs contend that the silencing and ejection of Plaintiff Brevis from the LBOC meeting constitutes a violation of her rights under the Louisiana Open Meetings Law. (Rec. Doc. 50, ¶¶ 76-79). The Louisiana Open Meetings Law provides that "[i]t is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised

of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of [the Open Meetings Law] shall be construed liberally." La. R.S. 42:12. However, the Louisiana Open Meetings Law does "not prohibit the removal of any person or persons who willfully disrupt a meeting to the extent that orderly conduct of the meeting is seriously compromised." La. R.S. 42:17(C).

LPSO Defendants maintain that Plaintiff Brevis's "inflammatory public commentary towards [named Board Member] was disruptive enough to necessitate her removal from the Library Board of Control meeting…" (Rec. Doc. 53-1, p. 20). Plaintiffs argue that Plaintiff Brevis "was calmly standing behind the podium during her comments, not causing any disturbance to the meeting." (Rec. Doc. 81, p. 24). The Court finds that Plaintiffs have sufficiently alleged facts, which if true, could lead a reasonable person to believe her conduct was not disruptive thereby removing this from an issue of law to a matter of fact. Accordingly, it is recommended that LPSO Defendants' request to dismiss them from Count 6 of the Amended Complaint be denied.

## Conclusion

For the reasons discussed herein, it is recommended that LPSO Defendants' Rule 12(b)(6) Motion be GRANTED in part and DENIED in part. Specifically, the Court recommends granting LPSO Defendants' Motion in part, whereby all federal

Constitutional claims against them are dismissed but denying LPSO Defendants' Motion in part, whereby all claims against them arising under state law can proceed on the basis of supplemental jurisdiction.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 26th day of September, 2024.

_____

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE