## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| LILLIAN LYNETTE MEJIA ET AL | CASE NO.  6:23-CV-00307 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| LAFAYETTE CONSOLIDATED GOVERNMENT ET AL | MAGISTRATE JUDGE CAROL B. WHITEHURST |

## RULING

The present matter before the Court is a Motion for Summary Judgment filed by defendant Robert Judge [ECF No. 55]. Plaintiffs have filed an opposition to the Motion [ECF No. 134] and Judge filed a reply [ECF No. 137]. After considering the parties' briefs, the summary judgment record, and the relevant authorities, the Court DENIES the motion as follows.

### I.
### BACKGROUND

In this Section 1983 case, plaintiffs Lillian Lynette Mejia and Melanie Brevis allege that the Lafayette Parish Library Board of Control (the "Library Board" or "Board") and the Board's President, Robert Judge, violated the First Amendment by engaging in viewpoint discrimination during the Board's public comment sessions by silencing critics of the Board's actions and policies. Mejia and Brevis are frequent attendees of Library Board meetings and frequently sign-up to speak during the Board's public comment sessions.[1] Both have been critics of Judge and the Library Board, and often challenge the Board's actions with respect to the re-classification and removal of books and other library system materials that the Board deems offensive or inappropriate for children and young adults.[2] They also allege that Judge and certain members of

---

[1] ECF No. 134-1 at ¶¶ 4-5.
[2] *Id.* at ¶¶ 6, 14-15.

1

the Library Board have disparaged and attacked the LGBTQ community in the course of debates over whether to remove or restrict certain library materials.[3]

On the other side of the debate, Judge and certain public speakers at Board meetings argue that the Public Library System collection includes books and videos in the children's and young adults' section of the library that they claim contain inappropriate sexual content, and that those materials should be removed from the library or restricted to the adult sections of the library. Mejia and Brevis contend that Judge wields purportedly neutral procedural rules and Louisiana's "disturbing the peace" statute to silence opposing viewpoints.[4]

During its regular meetings, the Library Board allows members of the public to speak on matters that are posted in the Board's meeting agenda as well as matters that are not on the agenda. In this regard, the Library Board adopted a written "Procedure for Interested Persons Wishing to be Heard on Matters related to the Lafayette Public Library Board of Control."[5] Among the relevant regulations contained in the Board's public comment procedures include the requirement that "[p]ersons wishing to address the Board must complete [a] speaker's request form and submit to the Library Director\Board Secretary, or his\her designee...." [6] The Board's public comment procedures further provide a three-minute time limit for speaker comments and require that comments made on agenda items "be restricted to the subject matter described on the agenda."[7] The Board's procedures, however, also provide a period for additional public comments after the Board completes its agenda items.[8] Public comments during this period can address "matters that are not on the agenda."[9] The Board's public comment procedures limit the subject matter of the

---

[3] *Id.*
[4] ECF No. 50 at ¶¶ 47, 53.
[5] ECF No. 55-2 at 6.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

public comments during this period to matters "related only to Lafayette Public Library System business, but that do not appear specifically as agenda items."[10]

As far as rules governing decorum during these public comment sessions, the Board's public comment procedure prohibits "debate or confrontation with the Board," and directs speakers not to "make any derogatory comments about any person, but to simply state factually what that speaker's concerns are."[11] Judge also runs the Board's meetings under Robert's Rules of Order which, *inter alia*, requires that speakers "be courteous in their language and deportment, and avoid all personalities, never alluding to the officers or other members by name, where possible to avoid it, nor to the motives of members."[12] The Library Board also posts a copy of Louisiana Rev. Stat. 14:103, which imposes criminal sanctions for "disturbing the peace." Section 14:103 defines "disturbing the peace" as "the doing of any of the following in such manner as would foreseeably disturb or alarm the public," including "[a]ddressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty," or the "[i]nterruption of any lawful assembly of people." Judge refers to Section 14:103 when outlining the rules that members of the public must follow when addressing the Library Board.[13]

Both Mejia and Brevis signed up to speak during the general public comment session of the Board's January 9, 2023 meeting.[14] Per the Board's public comment procedures, Brevis was

---

[10] *Id.*
[11] *Id.*
[12] ECF No. 55-3 at 5.
[13] *See, e.g.,* ECF No. 134-10 at 00:13:50.
[14] ECF No. 134-1 at ¶ 13; ECF No. 134-2 at ¶ 9.

allotted three minutes to address the board on matters "related only to Lafayette Public Library System business, but that do not appear specifically as agenda items."[15] Brevis' comments came after the Library Board had completed its scheduled agenda items.[16] During Brevis' statement to the Board, Judge ruled Brevis "out of order" three times.[17] Judge allowed Brevis to continue her remarks after his first ruling.[18] After ruling Brevis out of order for the second and third time, Judge ordered that her microphone be silenced and requested that the Lafayette Parish Sherif's Office deputies providing security for the meeting escort Brevis from the speakers' podium. Audio and video recordings in the record reflect Brevis' remarks to the Board as follows:

> Melanie Brevis, Lafayette Parish. November's meeting seemed to be superficial attempts to show that board members are just like us. That maybe if we get to know some of you better, we'll forget about your hateful and prejudicial actions … **[Judge rules comments out of order and Brevis continues]** … That maybe if you gave a gift card to a librarian, we'd forget how you tried to illegally fire another. Some even suggested that we get to know board members better so we can see what fine people they are. But we don't need more information. We don't need a ten-minute rundown of someone's resume. We don't need to know how many kids or grandkids they have, or how long they've lived in Lafayette, as if that somehow makes them better people. We know all we need to know. We know a certain trio of parish council members have a clear type when selecting board of control members, and that type is a simple checklist: conservative, Christian, willing to toe the false narrative that there is a leftist takeover and that children are in danger, willing to segregate certain materials due solely to personal beliefs. We know that people who speak about parental rights and community standards are just recycling old arguments from twentieth century's White Citizen Council, who were alarmed over a "communist takeover" called civil rights and desegregation. We know that these speakers are the true groomers, passing along their prejudices and outdated science to their children and grandchildren. We know the evils of board members themselves. We know Ms. Armbruster stood on a street corner outside the library protesting Drag Queen Story Time, grooming her children and others by her message … **[Judge rules comments out of order and Brevis continues]** … that

---

[15] ECF No. 134-1 at ¶¶ 13, 14, 16 (Brevis Declaration).
[16] ECF No. 134-7 at 0:41:22 – 0:43:10 (January 9, 2023 Board meeting).
[17] *Id.*
[18] *Id.*

there is something pathologically wrong with certain gender and sexual identities, even as she claims to love everyone **[Judge rules comments out of order and Brevis' microphone is silenced]** … We know Stephanie, Robert Judge, and groomers in the community have called, pushed false narratives—about LGBTQ+ community, linking them with pedophilia, AIDS, and high rates of suicide— someday pictures like this, will be next in history books to pictures like this … **[Judge orders that Brevis "be removed" and Sheriff's Office deputies approach Brevis and ultimately escort her from the podium]** ….[19]

In her Declaration, Brevis' explains that her remarks addressed "the events of the previous [Library Board] meeting, in which Defendant Judge devoted the beginning of the meeting to introducing each of the board members individually, by speaking about their biography and background."[20] She also explains that her comments addressed what she "observed to be the politicization of the [Library Board], where members were acting intentionally to suppress disfavored viewpoints from being present in the library."[21] She further explains that "Judge and members of the public use[d] the term 'grooming' to talk in reference to members of the LGBQT+ community and books with LGBQT+ themes, without any admonishment or interruption," and that her use of the word "grooming" in her remarks "was to say that they were preparing children to discriminate against certain groups of people."[22]

Mejia and Brevis subsequently filed the present action under 42 U.S.C. § 1983 "based upon the continuing violations of the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution."[23] They name as defendants Robert Judge personally and in his official capacity; Daniel Kelley—who succeeded Judge as President of the Library Board—in his official capacity; Mark Garber, in his official capacity as Lafayette Parish Sheriff; Deputy Rusty

---

[19] *Id.*; ECF No. 134-1 at ¶¶ 13, 14, 16 (Brevis Declaration).
[20] ECF No. 134-1 at ¶ 14 (Brevis Declaration).
[21] *Id.* at ¶ 15.
[22] *Id.* at ¶ 11, 22.
[23] ECF No. 50 at ¶ 2 (Plaintiffs' First Amended Complaint).

Santiny, in his individual and official capacities; and Deputy Sara Orgeron, in her individual and official capacities.[24] Plaintiffs also named as a defendant the Lafayette City-Parish Consolidated Government ("LCG").[25] Plaintiffs allege that the defendants' "policies governing the [Library Board] are unconstitutional facially and as applied."[26] They allege that these policies "are overly broad, vague, viewpoint and content-based restrictions on free speech in plain violation of the First Amendment to the United States Constitution."[27]

Although Mejia was not silenced during her public comment session, both plaintiffs allege that the actions of Judge and the Library Board restricted and chilled their exercise of free speech during the public comment portions of the Library Board's meetings.[28] Specifically, they point to the posting of Louisiana Rev. Stat. 14:103 (disturbing the peace), Judge's statements that the Board's policies on public speakers would be enforced and speakers who violate those policies would be removed, Judge's use of Sheriff's deputies to allegedly intimidate speakers, and Judge's actions in silencing Brevis during the January 9, 2023 Library Board meeting.[29]

Defendants Garber, Santiny, and Orgeron filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[30] The Court entered a judgment adopting the Magistrate Judge's Report and Recommendation ("R&R") recommending that the motion be granted in part and denied in part.[31] Specifically, the Court dismissed Brevis' and Mejia's federal constitutional claims against the moving defendants but denied the motion with respect to the state law claims

---

[24] *Id.* at ¶
[25] *Id.* at ¶
[26] *Id.* at ¶
[27] *Id.* at ¶ 48.
[28] ECF No. 134-1 at ¶¶ 9, 13 (Brevis Declaration); ECF No. 134-2 at ¶ 9, 13 (Mejia Declaration)
[29] ECF No. 134-1 at ¶¶ 9, 12, 17 ; ECF No. 134-2 at ¶ 10, 13, 16, 17; ECF No. 50 at ¶¶ 10, 22, 27, 46 (Plaintiffs' First Amended Complaint).
[30] ECF No. 53.
[31] ECF No. 132.

asserted against those defendants.[32] Defendant Daniel Kelly also filed a Motion to Dismiss and the Court entered a judgment adopting the Magistrate Judge's recommendation that the motion be granted in part and denied in part. [33] The Court ordered that the state law claims asserted against Kelly be dismissed but denied the motion with respect to the federal constitutional claims asserted against Kelly.[34] Judge then filed the instant Motion for Summary Judgment, arguing that qualified immunity bars the claims asserted against him in his personal capacity.

Judge subsequently filed a Motion to Stay Scheduling Order Deadlines and Discovery,[35] and Plaintiffs filed a Motion to Defer Consideration on Judge's Motion for Summary Judgment.[36] The Court referred these motions to the Magistrate Judge. The Magistrate Judge subsequently issued a memorandum order granting Judge's motion with respect to discovery but denying it with respect to other deadlines in the scheduling order.[37] The Magistrate Judge's order also bifurcated the question of qualified immunity from the other grounds for relief urged in Judge's Motion for Summary Judgment.[38]

## II.
### LEGAL STANDARDS

### A.  Summary Judgment Standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[39] The party moving for summary judgment is initially responsible for identifying portions

---

[32] Id.
[33] ECF No. 133.
[34] Id.
[35] ECF No. 64.
[36] ECF. No. 75.
[37] ECF. No. 130.
[38] Id.
[39] Fed. R. Civ. P. 56.

of pleadings and discovery that show the lack of a genuine issue of material fact.[40] The court must deny the motion for summary judgment if the movant fails to meet this burden.[41] If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[42] This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim.[43] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[44] A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.[45] The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.[46] Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party.[47]

### B. Qualified Immunity

Qualified immunity "alters the usual summary judgment burden of proof."[48] Qualified immunity is "is an immunity from suit rather than a mere defense to liability."[49] The doctrine operates to shield government officials "acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known."[50] Stated differently, qualified immunity protects

---

[40] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).
[41] *Id.*
[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted).
[43] *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).
[44] *Anderson*, 477 U.S. at 249 (citations omitted).
[45] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[46] *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).
[47] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).
[48] *Roy*, 950 F.3d at 254 (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)); *see also Rogers v. Jarrett*, 63 F.4th 971, 975 (5th Cir. 2023) ("plaintiffs bear the 'burden' to 'demonstrate the inapplicability of the [qualified immunity] defense.'") (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).
[49] *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).
[50] *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

government officials from civil liability only "when their actions could reasonably have been believed to be legal."[51] Because the doctrine operates as immunity from suit rather than a mere defense to liability, it alters the normal burden on summary judgment. When a defendant raises qualified immunity in a motion for summary judgment, the burden shifts to the plaintiff to overcome qualified immunity. To overcome qualified immunity, a plaintiff must establish: (1) the official violated a statutory or constitutional right; and (2) the right violated was "clearly established" such that a reasonable person would have fair warning that his or her conduct violates a constitutional right.[52] Although the plaintiff bears the burden of overcoming qualified immunity, all inferences must be drawn in the plaintiff's favor.[53] If the plaintiff satisfies this burden, the defendant will not be shielded from liability on the basis of qualified immunity.[54]

## III.
### DISCUSSION

### A.  Did Judge's Actions Violate the First Amendment?

The First Amendment to the United States Constitution prohibits the government from making laws that abridge "the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment is applicable to the states by virtue of the Fourteenth Amendment to the Constitution. "The scope of [a plaintiff's] First Amendment rights depends on the nature of the forum in which he seeks access."[55] The nature of forum impacts the level of scrutiny applied to restrictions on protected speech occurring within that forum. Courts have identified three primary types of

---

[51] *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)).
[52] *Ford v. Anderson Cnty., Texas*, 102 F.4th 292, 307 (5th Cir. 2024).
[53] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).
[54] *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022).
[55] *Imani v. City of Baton Rouge*, No. 17-439, 2022 WL 2760799 at *17 (M.D. La. July 14, 2022) (quoting *Estiverne v. Louisiana State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir. 1989)).

forums: "the traditional public forum, the designated public forum, and the non-public forum."[56] Courts have also identified a fourth, intermediate category, the "limited public forum."[57] A "non-public forum" is publicly-owned property that is not by tradition or government designation a forum for public communication.[58] A "public forum, on the other hand," are those places "which by long tradition or by government fiat have been devoted to assembly and debate."[59] A "designated public forum," is a forum the government designates as "a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects."[60] First Amendment protections are broadest for speech in traditional public forums and designated public forums.[61] In either forum, the government restrictions on speech are subject to strict scrutiny.[62]

The First Amendment protections for limited public forums differ. Limited public forums are "forums opened for public expression of particular kinds or by particular groups."[63] A public body may restrict speech in a limited public forum as long as the restrictions do not "discriminate against speech on the basis of viewpoint" and are "reasonable in light of the purpose served by the forum."[64] Viewpoint discrimination restricts speech based on the ideas or opinions it conveys. Viewpoint discrimination exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."[65] It is an "egregious form of content discrimination" and is "presumptively unconstitutional."[66] For example, in *Iancu v. Brunetti*, the

---

[56] *Chiu v. Plano Ind. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001).
[57] *Id.*
[58] *Id.*
[59] *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 44 (1983).
[60] *Cornelius v. NAACP Legal Defense & Education Fund, Inc.*, 473 U.S. 788, 800 (1985).
[61] *Imani*, 2022 WL 2760799 at *17-18.
[62] *Chiu*, 260 F.3d at 346.
[63] *Chiu*, 260 F.3d at 346.
[64] *Good News Club v. Milford Central Sch.*, 533 U.S. 98, 106 (2001).
[65] *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–830 (1995).
[66] *Id.*

Supreme Court addressed whether a provision in the Lanham Act prohibiting "immoral" or "scandalous" trademarks violated the First Amendment.[67] The Court held that this provision of the statute was unconstitutional because it discriminated against speech based on viewpoint—in the words of the Court, it "disfavors certain ideas."[68]

This proscription of viewpoint discrimination does not, however, eliminate a public body's ability to impose reasonable viewpoint-neutral rules on speech in a limited public forum. A public body may restrict the subject matter of speech in a limited public forum by, for example, limiting public comments during a meeting of the public body to agenda items or specific topics.[69] Such content-based restrictions are not subject to strict scrutiny and do not violate the First Amendment as long as they are reasonable and viewpoint neutral.[70] Public bodies may also require public speakers to register, impose time limits on public comments, and regulate the manner and mode in which public comments are presented to avoid disruptions to meetings as long as the regulations are reasonable and viewpoint neutral.[71] For example, in *Tyler v. City of Kingston*, the court addressed a rule adopted by a city council banning the public from bringing signs into city council meetings.[72] The court concluded that the sign restriction was viewpoint neutral and reasonably related "to maintaining the environment the government intended to create in that forum."[73]

The parties in the present case appear to agree that the public comment period of the Library Board's meeting is a limited public forum. In *Fairchild v. Liberty Indep. Sch. Dist*, the Fifth Circuit

---

[67] 588 U.S. 388, 390 (2019).

[68] *Id.* In his concurring opinion in *Iancu,* Justice Alito flatly stated that "[v]iewpoint discrimination is poison to a free society." *Id.* at 399.

[69] *McCullen v. Coakley*, 573 U.S. 464, 477 (2014); *Chiu*, 260 F.3d at 346; *see also Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021).

[70] *Chiu*, 260 F.3d at 346.

[71] *Tyler v. City of Kingston*, 74 F.4th 57, 62-63 (2d Cir. 2023) ("[I]n limited public fora such as City Council meetings, government entities are permitted to restrict the form or manner of speech offered by members of the public ….").

[72] *Id.*

[73] *Id.*

held that a public comment session during a public school board meeting "fits the hornbook definition of a limited—not designated—public forum, in which 'the State is not required to and does not allow persons to engage in every type of speech.'"[74] Here, the Library Board's public comment session similarly best fits the definition of a limited public forum because it is a forum "opened for public expression of particular kinds or by particular groups" that is analogous to the school board meeting at issue in *Fairchild*.[75] Accordingly, the First Amendment standards for speech in a limited public forum apply. These standards allow Judge and the Library Board to regulate the subject matter and manner of delivery of public comments during Board meetings, but they cannot discriminate in how they apply these rules based on a speaker's viewpoint.

Mejia and Brevis allege that the policies implemented by Judge and the Library Board during public meetings are facially unconstitutional as well as unconstitutional as applied to them. Judge's qualified immunity claim, however, focuses on his actions during the public comment period of the January 9, 2023 Library Board meeting when Brevis was silenced. Judge contends that he was applying the Library Board's viewpoint-neutral rules when he ruled Brevis out of order, silenced her microphone, and had her escorted from the podium. Specifically, Judge points to the Library Board's rules governing public comments (which prohibit "debate or confrontation" or "derogatory comments about any person,"); Louisiana Rev. Stat. 14:103 (prohibiting conduct that amounts to "disturbing the peace"); and Robert's Rules of Order (which require speakers at meetings to "be courteous in their language").[76] In his affidavit, Judge characterizes Brevis' comments during the January 9th meeting as "rude, discourteous and disruptive personal attacks towards the" members of the Library Board.[77] Moreover, in his statement of undisputed facts,

---

[74] 597 F.3d 747, 759 (5th Cir. 2010) (quoting *Good News Club*, 533 U.S. at 106).
[75] *Chiu*, 260 F.3d at 346.
[76] ECF No. 55-3.
[77] ECF No. 55-3

Judge asserts that Brevis' reference to another Board member, Stephanie Ambruster, "failed to pertain to any item being voted on by the Board or any [Library Board] business."[78] Judge also specifically cites Brevis' use of the term "groomers" and "grooming" in reference to Judge, Armbruster, and members of the public supporting the Library Board's actions as violating the Board's procedural rules.[79]

Plaintiffs, however, argue that Judge's reliance on the Library Board's rules of procedure and decorum (including Robert's Rules of Order) was pretextual and that Judge silenced Brevis and other speakers because they opposed the Library Board's policies. They argue that Brevis' remarks were made during the general public comment session at the end of the January 9th Library Board meeting and that, under the Board's procedural rules, Brevis' remarks were not limited to meeting agenda items.[80] Instead, the permissible subject matter of Brevis' comments was limited only to matters involving "Lafayette Public Library System business."[81] Brevis contends that her remarks addressed Library System business in that they opposed the Board's actions and policies with respect to efforts by Judge and other members of the Board to remove books and other materials from the library with which they do not agree, statements by Judge and others during Board meetings about the LGTBQ community, and Plaintiffs' concern over "politicization of the [Library Board], where members were acting intentionally to suppress disfavored viewpoints from being present in the library."[82] They contend that public speakers who voiced viewpoints favorable to the Board's actions and Judge's viewpoint were not prevented from speaking. With respect to criticisms of the Board, they argue that speakers who favored the Board's actions were allowed to

---

[78] ECF No. 55-5 at ¶¶ 9, 11.
[79] Id.
[80] ECF No. 134 at 18.
[81] Id.
[82] ECF 134-2 at ¶¶ 12, 15 (Mejia Declaration); ECF No. 134-1 at ¶¶ 11, 15 (Brevis Declaration).

single out Judge and other Board members by name and voice support for their actions.[83] With respect to Brevis' use of the term terms "groomer" and "grooming"—terms that Judge characterized as personal attacks—Plaintiffs point to instances in the record where Judge and other speakers used the terms "grooming" and "groomers" in challenging books and other materials that they found offensive.[84] Plaintiffs argue that Brevis was using the same terms to criticize these actions by the Board, which she contends amounts to censorship and intolerance.[85]

The Court concludes that Plaintiffs have demonstrated a genuine issue of material fact as to whether Judge's motivation for silencing Brevis was based on impermissible viewpoint discrimination.[86] The record reflects that Brevis registered to speak as required by the Board's procedural rules and her remarks did not exceed her three-minute time limit.[87] Her remarks also do not appear to have disrupted the Library Board meeting in that they occurred after the Board had completed its business.[88] Moreover, based on the audio recording of Brevis' remarks, it does not appear that Brevis was shouting, yelling, or otherwise disrupting the Board's public comment session.[89]

With respect to Judge's argument that Brevis' remarks were not relevant to the business before the Library Board, the Board's content restrictions on the public comment sessions at the end of Board meetings permit speakers to address a broader array of issues than the specific agenda items considered by the Board—speakers were allowed to address any matters relevant to "Lafayette Public Library System business."[90] Turning to the subject matter of Brevis' comments,

---

[83] ECF No. 134 at 21; ECF No. 134-1 at ¶¶ 10 (Brevis Declaration).
[84] ECF No. 134 at 20-21 (citing ECF No. 134-5, 134-6, 134-7,134-8, and 134-10) (Audio Recordings of Library Board Meetings)).
[85] *Id.*
[86] *Rosenberger,* 515 U.S. at 829–830.
[87] ECF No. 134-7 at 0:41:22 – 0:43:10 (January 9, 2023 Board meeting).
[88] *Id.*
[89] *Id.*
[90] ECF No. 55-2 at 6.

a reasonable trier of fact could conclude her remarks were relevant to the actions of the Library Board and statements by Board members with respect to the removal or re-classification of library materials. Moreover, Brevis' reference to protests over the library's "Drag Queen Story Time" program for children involved a proposed Library System program that was ultimately cancelled.

The audio recordings of prior Library Board meetings also support Brevis' contention that other public speakers addressed similar topics during public comment sessions but, unlike, Brevis were not silenced. For example, during the April 18, 2022 Library Board meeting, a speaker supporting the Library Board's policies, urged the Board not to change course because of LGBTQ advocacy groups and suggested that certain materials in the Library System collection amounted to "grooming" and "normalizing" pedophilia.[91] Plaintiffs also cite other examples in the audio recordings where speakers addressed similar topics but were not silenced.[92] Other speakers referenced Judge and Library Board members by name and voiced support for their actions.[93]

Judge's primary argument for silencing Brevis was her alleged personal attacks on Board members. Judge's arguments rely on the Board's public comment procedures, which prohibit "debate or confrontation" with the Board.[94] Judge's reliance on these prohibitions is constitutionally suspect in at least two respects. First, the prohibition of "debate or confrontation" with the Board is arguably a restriction that discriminates based on viewpoint. In other words, it prohibits viewpoints opposing the Board's actions and policies—which could be considered "debate or confrontation" with the Board—yet allows speaker viewpoints supporting the Board's actions. Second, even if this rule could be deemed viewpoint neutral, Judge's use of the rule in Brevis' case creates a triable issue as to whether Judge was using the rule to discriminate on the

---

[91] ECF No. 134-5 at 2:16:00 (Recording of April 18, 2022 Board meeting).
[92] ECF No. 134 at 20-21.
[93] ECF No. 134-4 at 9; 134-10 at 00:58:40-01:00:50 (Recording of October 17, 2022 Board meeting)..
[94] ECF No. 55-2.

basis of viewpoint because "[t]he recitation of viewpoint-neutral grounds may be a mere pretext for an invidious motive."[95] The meeting recordings in the record reflect a number of instances where speakers supported the Board's positions or even argued that the Board should take stronger positions—such as the speaker who implored the Board not to "give in" to special interest groups supporting library materials with LGBTQ themes.[96] Another speaker criticized the Library System for maintaining a book in the children's section of the library that the speaker deemed offensive.[97] Yet, these speakers were not silenced by Judge even though some of their comments could be deemed critical of the Library System.

Judge also justifies his actions with respect to Brevis on the grounds that her comments were offensive—specifically that they were "vile" and "disgusting, derogatory and confrontational."[98] Public bodies can proscribe "personal attacks" in a limited public forum on the ground that they are irrelevant and violate permissible, viewpoint-neutral content restrictions.[99] Here, however, Brevis' references to Judge and other Board members were tied to their policies (and public statements) in connection with Library System business and expressed (albeit stridently) Brevis' opposition to their statements and policies. Accordingly, they were not irrelevant to Library System business. With respect to her comments being offensive or even "vile," a reasonable trier of fact might agree with Judge's characterization. However, "[g]iving offense is a viewpoint,"[100] so "ideas may not be prohibited merely because the ideas are themselves

---

[95] *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985)).

[96] ECF No. 134-5 at 2:16:00 (Recording of April 18, 2022 Board meeting).

[97] *Id.* at 3:15:37.

[98] ECF No. 55-1 at 6.

[99] *Steinberg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377 (4th Cir. 2008).

[100] *Moms for Liberty-Brevard Cty., Fla. v. Brevard Public Schools*, 118 F.4th 1324, 1334 (11th Cir. 2024) (quoting *Matal v. Tam*, 582 U.S. 218, 243 (2017)).

offensive to some of their hearers."[101] Judge's justification for silencing Brevis' remarks on the ground that they were offensive does not pass constitutional muster.

Finally, the Court turns to Brevis' use of the terms "groomer" and "grooming" and Judge's argument that these terms "had nothing to do with Lafayette Parish Library System business and were derogatory, confrontational and violated Robert's Rules of Order."[102] As explained above, the fact that the statements were offensive does not support Judge's actions in silencing Brevis' microphone and ordering Sheriff's deputies to remove her from the speakers' podium.[103] Moreover, the audio recordings of Library Board meetings reveals other instances where members of the public used the term "grooming" in supporting the Board's policies with respect to removing or re-classifying books and other library materials.[104] Yet, the recordings do not reflect that Judge silenced these speakers.

Mejia's claims against Judge present a more complex question. Judge's qualified immunity arguments center on his actions silencing Brevis during the January 9, 2023 Library Board meeting. Mejia, however, was not silenced in this meeting, nor does she allege that she was silenced or personally threatened with arrest during any other Library Board meeting. Rather, Mejia alleges that she observed Judge's use of Sheriff's Department deputies to silence Brevis and that she "personally witnessed [Judge] interrupt and silent speakers who expressed criticisms of his viewpoint and policies."[105] She states that she "routinely self-censor[s] during public comment[s] to avoid running afoul of [Judge's] confusing meeting rules" and that she fears "being arrested, silenced, or removed from the meetings."[106] The minutes of the November 21, 2022

---

[101] *Id.* (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)).
[102] ECF No. 137 at 9.
[103] *Id.* (quoting *Street*, 394 U.S. at 592).
[104] ECF No. 134-5 at 2:16:00 (Recording of April 18, 2022 Board meeting).
[105] ECF No. 134-2 at ¶¶ 10, 17 (Mejia Declaration).
[106] *Id.*

Library Board meeting further reflect statements by Mejia to the Board objecting to the presence of security at the front of the meeting room and to the posting of Louisiana Rev. Stat. 14:103.[107] Mejia's claim is thus based on her allegations that Judge's actions and application of the Library Board's procedural rules over multiple meetings chilled her exercise of free speech in violation of the First Amendment. This claim is broader than a claim based solely on Judge's actions during the January 9, 2023 Library Board meeting, which is the focus of Judge's motion.

Courts have held that where "the use of coercive power is threatened, First Amendment rights may be violated by the chilling effect of government action that falls short of a direct prohibition against speech."[108] In *NAACP v. Button*, the Supreme Court noted that "the threat of sanctions may deter [the exercise of First Amendment rights] almost as potently as the actual application of sanctions."[109] "[C]hilling a plaintiff's speech ... is a constitutional harm adequate to satisfy the injury-in-fact requirement."[110] To state a claim under this doctrine, a plaintiff must show (1) he or she intends to engage in constitutionally protected conduct that is arguably proscribed by the statute at issue, and (2) there is a "credible threat" of prosecution if the plaintiff engages in that constitutionally protected activity.[111]

Here, it is unclear whether Judge's Motion reaches this aspect of Mejia's claims. The sole reference in Judge's motion to Mejia's self-censorship allegations is a brief argument that her allegations of self-censorship were conclusory and that she had not come forward with evidence that she faced a viable threat of prosecution. Assuming the Judge is asserting qualified immunity with respect to Mejia's First Amendment "chilling" claims, the Court concludes that Mejia has

---

[107] ECF No. 134-4 at 9.
[108] *Aebisher v. Ryan*, 622 F.2d 651, 655 (2d Cir. 1980) (citing *NAACP v. Button*, 371 U.S. 415, 433 (1963)).
[109] *Button*, 371 U.S. at 433.
[110] *Pool v. City of Houston*, 978 F.3d 307, 313 (5th Cir. 2020).
[111] *White Hat v. Landry*, No. 6:20-CV-00983, 2023 WL 3854717, at *6 (W.D. La. June 5, 2023) (quoting *Pool*, 978 F.3d. at 311).

demonstrated a triable issue as to whether Judge's policies and actions in moderating Library Board meetings chilled her exercise of free speech in violation of First Amendment. Specifically, the record reflects that Judge posted the text of the Louisiana Rev. Stat. 14:103, which imposes criminal penalties. The recordings of the Library Board meetings reveal that during the course of the meetings, Judge refers to that statute during Board meetings.[112] The presence of Sheriff's deputies and, at least in the case of Brevis, the use of those deputies to remove public speakers from the podium could lead Mejia to fear a viable threat of prosecution if she did not self-censor her remarks during the public comment session of the Board meeting. Accordingly, a reasonable trier of fact could conclude that Judge's actions violated Mejia's right to free speech under the First Amendment.

In sum, viewing the evidence in the light most favorable to Brevis and Mejia, a reasonable trier of fact could find that Judge crossed the line from permissible moderation of public comments in a limited public forum to unconstitutional viewpoint discrimination. This does not mean that Brevis and Mejia will ultimately prevail on the merits of their claims. However, they have overcome the first prong of Judge's qualified immunity claim by coming forward with evidence that creates a genuine question of fact as to whether Judge's actions in moderating the Library Board meetings violated the First Amendment.

### B. Was Judge's Conduct Objectively Unreasonable in Light of Clearly Established Law?

Judge next contends that his actions were not objectively unreasonable in light of "clearly established" law. According to Judge, he was merely maintaining order and applying the Library Board's neutral rules of procedure and decorum when he silenced Brevis' microphone and had her

---

[112] *See, e.g.,* ECF No. 134-10 at 00:13:50.

escorted from the podium. Judge also points out that he is not a trained lawyer and has not received any training with respect to the First Amendment.[113]

The "clearly established" law prong of qualified immunity requires that "existing precedent must have placed the statutory or constitutional question beyond debate" and must "squarely govern[ ]" the specific facts at issue.[114] "When deciding whether the right allegedly violated was 'clearly established,' the court asks whether the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law."[115] Citing the Fifth Circuit's decision in *Morgan v. Swanson*,[116] Judge argues that the prohibition against "viewpoint discrimination does not inform an official as to what, precisely, constitutes a viewpoint discrimination" and, accordingly, viewpoint discrimination is "far too general" to be clearly established for purposes of qualified immunity.[117]

Judge's reliance on *Morgan* is misplaced. *Morgan* involved First Amendment claims asserted against two elementary school principals for prohibiting the distribution of written religious materials by students on school premises during school activities.[118] The case, according to the majority, raised complex questions of whether the *Tinker* or *Hazlewood* standard applied to the plaintiffs' claims.[119] The court further noted that "further complicating our inquiry is the fact that *Tinker's* application in the elementary-school context has never been clearly established."[120] Finally, the court noted "Establishment Clause concerns add still another layer of complexity to

---

[113] *Id.* at 24.
[114] *White v. Pauly*, 580 U.S. 73, 78 (2017); *Mullenix v. Luna*, 577 U.S. 7, 14 (2015).
[115] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)(emphasis in original).
[116] 755 F.3d 757, 761 (5th Cir. 2014). The Court notes that the *Morgan* opinion quoted by Judge is an abbreviated panel ruling on remand issued after the en banc court's full decision in  659 F.3d 359 (2011) (en banc). This later panel decision does not fully address the en banc court's reasoning and considerations in concluding that the defendants in that case did not violate clearly established law.
[117] ECF No. 55-1 at 9.
[118] *Morgan*, 659 F.3d at 364-70.
[119] *Id.* at 375-76.
[120] *Id.* at 377.

our legal analysis."[121] In light of the unique legal and factual issues presented by the case, the court concluded that there was no "controlling authority" nor a "robust consensus of persuasive authority" to conclude that the defendants' actions violated clearly established law.[122] Simply put, *Morgan* is not factually—or legally—analogous to the present case.

In contrast, the Fifth Circuit's decision in *Heaney v. Roberts* provides a factually analogous case involving viewpoint discrimination in the context of a limited public forum.[123] In that case, Heaney registered to speak during the time allowed for public comment during a Jefferson Parish Council meeting in Gretna, Louisiana.[124] He was allotted five minutes to address the Council.[125] Before his allotted time expired, Heaney was cut off by the council's presiding officer, Christopher Roberts, who accused Heaney of attempting to contradict and "to berate" the parish attorney.[126] Roberts ultimately had Heaney removed from the meeting, stating "I'm going to ask that you be removed because you're being hostile so if you would please exit."[127] The court noted that Heaney was speaking within his allotted time and his comments addressed an approved topic.[128] The court concluded that the record revealed a factual dispute as to whether Roberts' refusal to allow Heaney to continue with his comments was viewpoint-based or whether it was based on a reasonable viewpoint-neutral restriction. According to the court, "if Roberts acted with improper motive, he violated Heaney's clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum."[129] Similarly, here, if the trier of fact determines that Judge's decision to silence Brevis was motivated by viewpoint-based discrimination, he violated

---

[121] *Id.* at 380.
[122] *Id.* at 382.
[123] 846 F.3d 795 (5th Cir. 2017).
[124] *Id.* at 798.
[125] *Id.*
[126] *Id.* at 799.
[127] *Id.*
[128] *Id.* at 802.
[129] *Id.*

her clearly established First Amendment right to address the Library Board free of viewpoint discrimination.[130]

Other cases cited by Judge are similarly distinguishable. For example, Judge cites cases involving subject matter restrictions on public comments in limited public forums but not viewpoint-based restrictions.[131] Here, as the court previously concluded, Brevis' comments during the public comment session fell within the subject matter restrictions imposed by the Library Board's meeting—"comments related only to Lafayette Public Library System business, but that do not appear specifically as agenda items."[132] The question in the present case, therefore, is not whether Judge imposed permissible content restrictions, but whether he was motivated by "the specific motivating ideology or the opinion or perspective of the speaker" in silencing Brevis at the January 9, 2023 Library Board meeting.

Judge's reliance on the district court's opinion in *Biggers v. Massingill* is also misplaced.[133] In that case, the plaintiff signed up to speak at multiple public meetings of the Hood County, Texas Commissioners' Court. The Commissioners Court allowed members of the public to register and address non-agenda topics during its first meeting of each month subject to rules of procedure and decorum adopted by the Commissioners' Court. The plaintiff in *Biggers* was repeatedly silenced by the presiding officer and ultimately ejected from several Commissioners' Court meetings when he attempted to criticize the policies of the Commissioners' Court and criticized county officials

---

[130] Judge argues that *Heaney* is distinguishable because there was no evidence that Heaney "spoke about issues that were off topic, lodged personal attacks against any of the council members, or violated any rules or decorum policies of the council." ECF No. 137 at 5. As the Court previously concluded, however, Brevis' comments fell within the subject matter restrictions of the Library Board's public comment procedures. With respect to personal attacks and violations of rules of decorum, the Court has also concluded that there is a genuine issue of material fact as to whether Judge's reliance on these rules was pretextual. In short, Judge's arguments do not distinguish *Heaney* for purposes of the present motion.

[131] *See, e.g., Jones v. Heyman*, 888 F.2d 1328 (11th Cir. 1989); *Steinberg*, 527 F.3d 377; *Wenthold v. City of Farmers Branch, Tex.*, 2012 WL 467325, at *10 (N.D. Tex. Feb. 14, 2012).

[132] ECF No. 55-2 at 6.

[133] 23-CV-0359, 2023 WL 58206971 (N.D. Tex. September 8, 2023).

by name.[134] The district court granted the defendant's motion for summary judgment based on qualified immunity, holding that "where a speaker is removed for running afoul of a public body's codified decorum rules and its stated intent behind its public comment period, it is not sufficiently clear that his removal violates a constitutional right."[135] However, after Judge filed his Motion for Summary Judgment, the Fifth Circuit reversed the district court's grant of summary judgment in *Biggers* in an unpublished decision.[136] Citing *Heaney,* the court held that "Biggers squarely alleges that Massingill's invocation of the decorum rule was a mere pretext to silence his views" and that "if proved, that would clearly violate the First Amendment."[137] Accordingly, the circuit held that the district court erred in sustaining Massingill's qualified immunity claim.[138]

Judge's argument that he does not have legal training and could not subjectively draw the line between permissive regulation of public speech in a limited public forum and impermissible and unconstitutional viewpoint discrimination does not change this result. As Mejia and Brevis point out, the second prong of the qualified immunity inquiry is an *objective* standard.[139] In other words, was Judge's conduct objectively reasonable in light of clearly established law.[140] Here, if Mejia and Brevis prove by a preponderance of the evidence that Judge's true motive was to discriminate on the basis of viewpoint, his actions in silencing Brevis were objectively unreasonable in light of clearly established law. Brevis' comments occurred after the Library Board had completed its agenda items and thus did not disrupt an ongoing meeting. Her comments

---

[134] *Id.* at *1-2.

[135] *Id.* at *3.

[136] *Biggers v. Massingill*, 2025 WL 429974 at*2 (5th Cir. February 7, 2025) (unpublished).

[137] *Id.*

[138] *Id.*

[139] *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021) ("To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.") (quoting *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)).

[140] *Id.*

were also within the three-minute time period allotted to her and pertained to the general business of the Lafayette Public Library System—specifically, her opposition to certain policies of the Board as well as public comments by Judge and other members of the Board. Similarly, to the extent that the trier of fact determines that Judge's actions chilled Mejia's exercise of her First Amendment rights during Library Board meetings, his actions were objectively unreasonable in light of clearly established law.

Given that Mejia and Brevis have overcome both prongs of Judge's qualified immunity claim, the Court DENIES his Motion for Summary Judgment with respect to qualified immunity.

### C. Remaining Claims.

In addition to qualified immunity, Judge also moves for summary judgment with respect to Plaintiffs' claims against him in his official capacity, Plaintiffs' claims for injunctive relief, and Plaintiffs' Open Meetings Act claims. The Magistrate Judge previously entered an order bifurcating Judge's qualified immunity claims from the other grounds for summary judgment stated in his motion, and deferred consideration of these other grounds pending a ruling on qualified immunity.[141] The Magistrate Judge also stayed discovery pending a ruling on qualified immunity.[142] In light of the current stage of the case, the Court concludes that Judge's Motion for Summary Judgment with respect to these other grounds for summary judgment should be denied without prejudice to re-urging these additional grounds after discovery.

---

[141] ECF No. 130.
[142] *Id.*

## IV.
### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [ECF No. 55] filed by

Robert Judge is **DENIED.**

**THUS DONE AND SIGNED** in Chambers this 20th day of March, 2025.


**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**

25